NO. 16-56307

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN RE EASYSAVER REWARDS LITIGATION

Josue Romeo, Deanna Hunt, Kimberly Kenyon, Gina Bailey, Alissa
Herbst, Grant Jenkins, Bradley Berentson, Jennifer Lawler, Daniel
Cox, Jonathan Walter, and Christopher Dickey
*Plaintiffs-Appellees,*

Brian Perryman,
*Objector-Appellant,*

v.

Provide Commerce, Inc.; Encore Marketing International, Inc.; and
Regent Group, Inc.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of California, No. 3:09-cv-2094 BAS-WVG

Brief of Plaintiffs-Appellees

Steckler Law Group LLP
Bruce Steckler
12720 Hillcrest Road
Suite 1045
Dallas, Texas  75230
(972) 387-4040
*Attorneys for Plaintiffs-Appellees*
*[Other counsel on Signature Block]*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES .................................................... iii

INTRODUCTION .................................................................. 1

ISSUES PRESENTED ............................................................ 3

STATEMENT OF THE CASE ................................................. 5

    A. Plaintiffs Were Unwittingly Enrolled In EasySaver Rewards While Trying To Claim A $15 Gift Code From A Provide Commerce Website. ........................................................ 5

    B. Plaintiffs And Their Counsel Were The First To Do Anything To Stop The EasySaver Program. ............................................ 7

    C. The Settlement Provides Class Members The Opportunity To Get 100 Percent Of Their Damages. ..................................... 8

        1. The settlement agreement gives class members the right to claim up to 100 percent of their damages and replaces the $15 gift code. ........................................................ 9

        2. The district court approved the settlement and the requested fees using both the lodestar and percentage of recovery methods. ................................................... 10

    D. Perryman Files His Objection At The Last Minute, After Making A Claim For 100 Percent Of His Damages. ....................... 11

    E. The District Court Rejects All Of Perryman's Objections After A Full Fairness Hearing. .............................................. 12

    F. The District Court Again Rejects All Of Perryman's Objections After A Second Full Fairness Hearing. ............................ 15

SUMMARY OF THE ARGUMENT ..................................... 17

ARGUMENTS AND AUTHORITIES ................................... 20

    I.   THE DISTRICT COURT'S FINDING THAT, TAKEN AS A WHOLE, THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE HIGHLIGHTS WHY THIS COURT SHOULD AFFIRM. ...................................................................... 20

    II.  THE DISTRICT COURT PROPERLY VALUED THE SETTLEMENT AND CORRECTLY DETERMINED THAT CAFA DOES NOT APPLY. ......................................................... 22

A. The Court Should Reject Perryman's Assertion That The District Court Failed To Consider The Interests Of Absent Class Members. .................................................................................... 22

B. Perryman's Argument That The Court Awarded Attorneys' Fees Solely Based On The Percentage-Of-Fund Method Is Untrue. ........... 23

C. The District Court Properly Applied This Court's Decision In *DVD-Rental Antitrust*. ....................................................... 31

D. The District Court Correctly Concluded That The Merchandise Credit In This Case Is Not A Coupon Under CAFA. ........................... 37

III. THE DISTRICT COURT'S FINDING THAT THE *CY PRES* MEETS THE NINTH CIRCUIT STANDARD OF PROVIDING A RELEVANT NATIONAL BENEFIT GOES UNREFUTED. ................. 48

A. The Cy Pres Meets The Ninth Circuit's Standard. ................................ 48

B. The University Affiliations Perryman Attacks Do Not Evidence A Conflict Of Interest. ........................................................ 50

   1. Perryman has no evidence of an actual conflict. ........................ 50

   2. No decision supports Perryman's position. ............................... 51

C. Perryman's Contention That The Universities Are "Too Local" Rests On False Factual And Legal Premises. ..................................... 52

D. Perryman And Others Who Submitted A Claim Are Not Superior Cy Pres Recipients To The Three Universities. .................................. 54

IV. THE AGS' MOTION FOR LEAVE TO FILE AN AMICI CURIAE BRIEF SHOULD BE DENIED. .................................................. 57

A. The Motion Is An Undesired Attempt To Bypass Established CAFA Procedures. ............................................................ 57

B. The Proposed Amicus Brief Is Irrelevant To The Disposition Of This Case. ..................................................................... 60

C. Even If This Court Allows The AGS To File Their Brief, It Must Affirm The District Courts' Orders. ........................................... 62

CONCLUSION ....................................................................... 63

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Bessemer City*
  470 U.S. 564 (1985) ........................................................................ 7, 38

*Been v. O.K. Indus.*
  No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151 (E.D. Okla. 2011) ...... 30

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) ............................................................................ 47

*Browning v. Yahoo! Inc.*
  04-01463, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. 2007) ............................ 56

*California v. IntelliGender*, LLC
  771 F.3d 1169 (9th Cir. 2014) ............................................................... 58

*Chin v. United States*
  57 F.3d 722 (9th Cir. 1995) ................................................................... 38

*City of Livonia Emples. Ret. Sys. v. Wyeth*
  2013 U.S. Dist. LEXIS 113658 (S.D.N.Y. Aug. 7, 2013) ................................ 30

*Davis v. Cole Haan, Inc.*
  No. C 11-01826 JSW, 2013 WL 5718452 (N.D. Cal. Oct. 21, 2013) ............... 46

*Frank v. Netflix (In re Online DVD-Rental Antitrust Litigation)*
  779 F.3d 934 (9th Cir. 2015) .......................................................... passim

*Garner v. State Farm Mut. Auto. Ins. Co.*
  No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....... 59

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ........................................................ passim

*Hofmann v. Dutch LLC*
  317 F.R.D. 566 (S.D. Cal. 2016) ............................................................. 60

*Houck v. Folding Carton Admin. Comm.*
  881 F.2d 494 (7th Cir. 1989) ................................................................. 53

*Id.* at 952 .................................................................................................... 37

*In re Airline Ticket Comm'n Antitrust Litig.*
268 F.3d 619 (8th Cir. 2001) ................................................................ 53, 54

*In re Am. Int'l Grp., Inc. Sec. Litig.*
916 F. Supp. 2d 454 (S.D.N.Y. 2013) ......................................................... 62

*In re Baby Prods. Antitrust Litig.*
708 F.3d 163 (3d Cir. 2012) ................................................................ 55, 56

*In re Cadence Design Sys. Sec. & Deriv. Litig.*
No. C-08-4966 SC, 2012 U.S. Dist. LEXIS 56785 (N.D. Cal. April 23, 2012... 30

*In re Dry Max Pampers Litig.*
724 F.3d 713 (6th Cir. 2013) ...................................................................... 46

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
55 F.3d 768 (3d Cir. 1995) .................................................................. 26, 27

*In re HP Inkjet Printer Litigation*
716 F.3d 1173 (9th Cir. 2013) ................................................... 24, 25, 27, 45

*In re Lupron Mktg. & Sales Practices Litig.*
677 F.3d 21 (1st Cir. 2012) ................................................................. passim

*In re Netflix Privacy Litig.*
No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......... 62

*In re Pharma. Indus. Average Wholesale Price Litig.*
588 F.3d 24 (1st Cir. 2009) ................................................................. 51, 55

*In re Southwest Airlines Voucher Litig.*
799 F.3d 701 (7th Cir. 2015) ...................................................................... 46

*In re Universal Service Fund*
No. 02-MD-1468-JWL, 2013 U.S. Dist. LEXIS 80204 (D. Kan. June 7, 2013) 53

*Johnston v. Comerica Mortg. Corp.*
83 F.3d 241 (8th Cir. 1996) ....................................................................... 61

*Lane v. Facebook*, *Inc.*
696 F.3d 811 (9th Cir. 2012) ............................................................... 19, 51

*Masters v. Wilhelmina Model Agency, Inc.*
  473 F.3d 423 (2d Cir. 2007).............................................................. 48

*Mertens v. Hewitt Assocs.*
  508 U.S. 248 (1993)......................................................................... 24

*Milliron v. T-Mobile USA*
  No. 07 Civ. 10329 (RJS), 423 Fed. Appx 131 (3d Cir. 2011) ........................... 30

*Nachshin v. AOL, LLC*
  663 F.3d 1034 (9th Cir. 2012)................................................... 49, 51, 52

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*
  688 F.2d 615 (9th Cir. 1982)......................................................... 20, 21

*Powell v. Georgia-Pacific Corp.*
  119 F.3d 703 (8th Cir. 1997)............................................................. 55

*Redman v. RadioShack Corp.*
  768 F.3d 622 (7th Cir. 2014)............................................................. 41

*Reibstein v. Rite Aid Corp.*
  761 F.Supp.2d 241 (E.D. Pa. 2011) .................................................. 40, 42

*Reider v. Electrolux Home Care Prods., Inc.*
  No. 8:17-cv-26 (C.D. Cal.) .......................................................... 44, 45

*Rosenfeld v. Comm'r of Internal Revenue*
  No. 11-73362, 2013 U.S. App. LEXIS 16461 (9th Cir. 2013) ........................... 38

*Schwartz v. Citibank, N.A.*
  50 Fed. App'x 832 (9th Cir. 2002)................................................... 30, 31

*Shames v. Hertz Corp.*
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ............................................ 14

*Six (6) Mexican Workers v. Arizona Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990)................................................. 26, 48, 49, 56

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*
  463 F.3d 646 (7th Cir. 2006)........................................................ 40, 41

v

*Tyler v. Michaels Stores, Inc.*
  150 F.Supp.3d 53 (D. Mass. 2015) .................................................... 60

*United States v. Kama*
  394 F.3d 1236 (9th Cir. 2005) ............................................................ 30

*Van Vranken v. Atl. Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995) .................................................... 30

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ..................................................... 27, 30

*Wilson v. DirectBuy, Inc.*
  No. 3:09-cv-590 (JCH), 2011 WL 2050537 (D. Conn. May 16, 2011) ............. 46

## Federal Statutes

28 U.S.C. § 1712, et seq. ................................................................. passim

Restore Online Shoppers Confidence Act
  Pub. L. 111-345 (December 29, 2010) ................................................ 7

## State Statutes

Cal. Bus. & Prof. Code §§ 17200, et seq. ............................................ 45

Cal. Civ. Code §§ 1750 et seq. ........................................................... 45

## Rules

Fed. R. App. P. 29(a)(3)(B) ...................................................... 57, 60, 62

Fed. R. Civ. P. 23(e) .......................................................................... 20

Fed. R. Civ. P. Rule 23 ................................................................. 20, 58

## Other Authorities

Class Action Fairness Act
  S. Rep. No. 109-14 (2005) .......................................................... 33, 44

## **INTRODUCTION**

This litigation arises from an internet scam known as "data pass." Each of the 1.3 million class members purchased an item on one of Defendant Provide Commerce Inc.'s websites and was offered a $15 gift code to use on their next purchase. Instead of receiving the $15 gift code, however, class members were unwittingly enrolled in the "EasySaver Rewards" program operated by Defendant Regent Group, Inc. ("Encore Marketing"). Defendant Provide Commerce transmitted class members' credit card information to Defendant Encore Marketing, and Encore Marketing began charging monthly "membership fees" until class members noticed the fees and cancelled their "memberships." No one did anything to stop the program until plaintiffs filed this lawsuit.

After nearly three years of intense litigation, numerous settlement conferences, and multiple mediations, the parties reached a settlement. The settlement provides a non-reversionary $12.5 million cash fund and a $20 merchandise credit directly provided to each class member to use on any one of Defendant Provide Commerce's websites. All class members that submitted a claim, which merely required them to confirm they did not intentionally enroll in the rewards program, were set to receive a 100 percent refund of all their out-of-pocket damages.

Only one class member objected to the settlement: Mr. Brian Perryman. Perryman and his counsel, serial objector Theodore Frank, do not object to the class compensation provided by the settlement. Indeed, Perryman stands to receive **100 percent** of his damages under the settlement. Instead, they object that class counsel's fees are too high and disagree with the parties' *cy pres* designation of three universities to fund research in the areas of internet privacy and fraud prevention.

The district court overruled Perryman's objections, finding that class counsel's fees are fair and reasonable and that the *cy pres* component complies with all Ninth Circuit standards. Perryman appealed.

While on appeal, this Court issued its decision in *Frank v. Netflix (In re Online DVD-Rental Antitrust Litigation)* ("*DVD-Rental Antitrust*"), 779 F.3d 934 (9th Cir. 2015), holding that the gift cards at issue in that case did not constitute "coupons" pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712(b). This case was subsequently remanded to the district court to evaluate the settlement under *DVD-Rental Antitrust*. The district court ordered additional briefing and held a **second** full fairness hearing. After reconsidering all of Perryman's arguments and *DVD-Rental Antitrust*, the district court **again** approved the settlement and clarified that the requested fees were justified under the percentage of the benefit method and under the lodestar multiplier approach.

Perryman has now filed a ***second*** appeal, singularly delaying relief to the other 1.3 million class members for ***five years***. Perryman's arguments are not supported by case law nor intended to benefit the class, but instead advance the political agenda of his attorney, Frank, and the anonymous financers of Frank's "Center for Class Action Fairness."

## <u>ISSUES PRESENTED</u>

Issue Number 1:

The Supreme Court and the Ninth Circuit have held that class action settlements are evaluated under multiple criteria, and that the total benefit given to the class must be fair, adequate and reasonable. ***Did the objector demonstrate that the district court clearly abused its discretion in holding that the settlement taken as a whole was fair, adequate and reasonable, despite objector's objections to certain facets thereof?***

Issue Number 2:

The district court found as a matter of fact that the three *cy pres* recipient universities' research funding would provide a national benefit to online privacy and information protection for the consumer class. ***Did the objector demonstrate that the district court's finding were clearly erroneous?***

Issue Number 3:

The district court conducted a lodestar calculation, finding that counsel's hours and rates, and ultimate lodestar fees of approximately $4.2 million were reasonable, and their request for a 2.1 multiplier (at the time the settlement was approved five years ago) was at the low end of Ninth Circuit's range of reasonableness. Objector never attacked any of these issues. ***Has the objector waived these issues on appeal or demonstrated how the district court's finding was clearly erroneous?***

Issue Number 4:

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712(b), expressly authorizes the use of lodestar-plus-multiplier to calculate fees in settlements where there is non-coupon non-equitable relief provided to the class, as an alternative to valuing the redeemed coupons. ***Has the objector waived this argument or demonstrated that the district court's award of lodestar fees was an abuse of discretion regardless of whether the $20 credits were "coupons" under CAFA?***

Issue Number 5:

The district court found that the settlement was not a "coupon settlement" under CAFA and the $20 credits were not coupons under CAFA because they replaced in-kind the $15 gift codes every class member requested, provided access to free products that the class demonstrably valued and were thus not "discounts," would not enrich the defendants, were fully transferrable, and could be used

relatively freely on four different online storefronts. ***Has the Objector demonstrated that the district court committed clear error in its view of the record and finding that the $20 credits in this case were not "coupons" under CAFA?***

## STATEMENT OF THE CASE

**A.      Plaintiffs Were Unwittingly Enrolled In EasySaver Rewards While Trying To Claim A $15 Gift Code From A Provide Commerce Website.**

Plaintiffs-Appellees Josue Romero, Gina Bailey, Brad Berentson, Grant Jenkins, Jennifer Lawler, John Walters, Daniel Cox, and Christopher Dickey



("Plaintiffs") represent a class of approximately 1.3 million people. ER361.[1] Each class member was shopping online on one of defendant Provide Commerce's websites, www.Proflowers.com, www.RedEnvelope.com, www.Sharies.com, or www.SecretSpoon.com, and each made a purchase. ER420-424.

After inputting their payment information and completing the transaction on the "checkout" page, each class member was presented with a "Thank You" gift code good for $15 towards a future purchase on one of the Provide Commerce websites. ER485 (Figure 1 above).

There is no dispute that 100 percent of the class members—all 1.3 million of them—intentionally clicked on the $15 gift code offer. ER5. But clicking on the offer was not enough to get the $15 gift code. ER417. Class members were redirected to another page where they were told to enter their email address and zip code and to accept their $15 gift code. ER417.

Instead of receiving the promised $15 gift code, however, class members were unwittingly enrolled in a monthly membership program called EasySaver Rewards, which was separately run by defendant Encore Marketing. ER417. Provide Commerce then electronically transmitted each class member's

---

[1] "ER" refers to Objector-Appellant's Excerpts of Record and Plaintiffs-Appellees' Supplemental Excerpt of Record.

confidential payment information to Encore Marketing who immediately charged each person $1.95, and then $14.95 per month. ER418.

### B. Plaintiffs And Their Counsel Were The First To Do Anything To Stop The EasySaver Program.

The EasySaver program went on for four years. ER54. Many complained, but no one did anything to stop the practice until this lawsuit. ER424-425. Months after this case was filed, defendants terminated the EasySaver Rewards enrollment program. *See* ER269. The abrupt termination brought about by this litigation saved consumers tens, if not hundreds of millions of dollars in additional damages. *Id*. Almost a year later, Congress passed the Restore Online Shoppers Confidence Act, Pub. L. 111-345 (December 29, 2010) ("ROSCA"). ER426. ROSCA made it a violation of the FTC Act section 5 to use "data pass," *i.e.*, to transfer someone's payment information between websites as the defendants did here, and required any online entity charging someone's account to have obtained the account information directly from them. ER454.

Plaintiffs filed these cases in September 2009, and they were consolidated into a single action before the Southern District of California. Dkt. 26. Four attorneys were appointed as interim co-lead counsel: Bruce Steckler of Baron & Budd, P.C.,[2] Jennie Lee Anderson of Andrus Anderson, LLP, James Patterson of

---

[2] Mr. Steckler left Baron & Budd and has continued to represent the class with his

The Patterson Law Group, and Michael Singer of Cohelan Khoury & Singer LLP. Dkt. 26.[3]

The parties litigated the case for nearly three years. ER81. While the docket bespeaks volumes of activity in this hard-fought case, the parties also engaged in extensive discovery involving hundreds of thousands of documents, multiple hearings, subpoenas and depositions all over the country. ER7.

### C. The Settlement Provides Class Members The Opportunity To Get 100 Percent Of Their Damages.

Overall, counsel for the Plaintiffs invested thousands of attorney and paralegal hours prosecuting this case on behalf of Plaintiffs and the Class. ER524-527, ER537-539, ER553-555, ER586-588, and ER606-608.

The parties' settlement efforts were overseen by Magistrate Judge William V. Gallo, with whom they met on four separate occasions between December of 2010 and October of 2011. Dkts. 90 109, 131, 198. Judge Gallo's yeoman efforts moved the parties closer to resolution, but it took two more retired federal judges to finish the job, as they attended a mediation session before Judge Leo S. Pappas (Ret.) on May 18, 2011, and reached an agreement in principle on April 9, 2012 in a mediation session with Judge Edward A. Infante (Ret.). ER359. The parties

---

new firm, Steckler, Gresham, Cochran.

[3] "Dkt." Refers to the district court docket in this case.

---

continued to negotiate terms and finally reached a settlement before moving for preliminary approval on June 13, 2012. Dkt. 248.

    **1.**      **The settlement agreement gives class members the right to claim up to 100 percent of their damages and replaces the $15 gift code.**

The proposed settlement class consists of:

> All persons who, between August 19, 2005 and the date of entry of the preliminary approval order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled by Regent Group Inc. dba Encore Marketing International, Inc. in one or more of the following membership programs: EasySaver Rewards, RedEnvelope Rewards, or Preferred Buyers Pass.

*See* ER360.

Under the settlement, defendants agreed to pay $12.5 million into a settlement fund which would pay class members' damages up to 100 percent of their out-of-pocket losses, as well as the costs of administration and attorneys' fees. ER361-363. To receive a refund, a class member needed only supply their name and email address, and check a box attesting that they did not intend to enroll in EasySaver and did not use it. ER367.

In addition to cash payments for their damages, class members would automatically receive $20 credits, good for use at any of Defendant Provide Commerce's websites, which carry a variety of products and items that were less than $20 and which a class member would therefore be able to get for free. ER251,

ER267.[4] The $20 value applies to the advertised price of products, ***even if they are already being offered at a discount*** which they often are.[5] ER251. The credits would be fully transferrable and good for an entire year, subject to certain limited blackout dates demanded by the defendants as part of the settlement. ER364.

The $12.5 million cash fund was non-reversionary—none of the unclaimed funds would return to the defendants. ER364. Any funds left over from the settlement fund would be distributed evenly to three *cy pres* recipients: the University of San Diego Law School, San Diego State University, and the University of California at San Diego. *Id.* Each of these schools has a national reputation, and nation-wide draw of students. The funds would be specifically earmarked to fund research and prevention efforts in the arenas of online fraud and data privacy. *Id.*

      **2.    The district court approved the settlement and the requested fees using both the lodestar and percentage of recovery methods.**

Plaintiffs' motion for preliminary approval of the settlement was granted on June 26, 2012, ER456, at which point the required notice was sent out. The preliminary approval order further required Plaintiffs to move for attorneys' fees

---

[4] Testimony of defense counsel: "[T]he reason we picked $20 is you can actually go onto these websites and buy something for $20." ER267 at 8-10.

[5] Without citing evidentiary support, Perryman falsely claims that the merchandise credit "could not be used with existing discounts." Br. at 38.

by November 26, 2012. ER490. On November 26, 2012, Plaintiffs moved for attorneys' fees, requesting two ***independent*** calculations: the lodestar plus multiplier method and the percentage of the fund calculation. ER503, ER209.

In support of the lodestar figure, Plaintiffs provided written evidence of their hours spent on the litigation and their normal hourly fees, which the district court credited. ER524-525, ER539, ER553, ER586, and ER606.

The district court issued its final order on February 4, 2013, approving the settlement and awarding attorneys' fees. ER16-37. The district court awarded attorneys' fees first utilizing the factors for a percentage of the fund method, and then under a lodestar-plus-multiplier method. ER36. The district court found that the damages fund of $12.5 million was fair and reasonable, and that the $20 credits essentially replaced the $15 off gift codes, but on even better terms for class members. ER23-24.

### D. Perryman Files His Objection At The Last Minute, After Making A Claim For 100 Percent Of His Damages.

The settlement drew a single objector out of 1.3 million people who received class notice. ER316. On November 29, 2012, class member Brian Perryman, made a claim for all of his damages, totaling over $110, from the settlement fund. ER658. Thereafter, he retained attorney Theodore Frank to challenge the

settlement. ER308 at ¶3. Perryman filed his objection on the last day possible, December 7, 2012. ER316.[6]

Perryman objected on three grounds: that the *cy pres* was not proper, that the non-cash relief is essentially "coupons" under CAFA, and that the percentage of the fund that the attorneys were receiving was too high under CAFA. ER324. An attorney for Mr. Perryman appeared at the final approval hearing on January 28, 2013. ER247.

### E.    The District Court Rejects All Of Perryman's Objections After A Full Fairness Hearing.

In a well-reasoned opinion, the district court overruled all of Perryman's objections. ER24, ER30-31. The court first concluded that the settlement was fair and reasonable, and that the awarded attorneys' fees were not disproportionate to the results achieved:

---

[6] Mr. Perryman's counsel, Theodore Frank, is the head of a non-profit law firm called the "Center for Class Action Fairness." Mr. Frank is a professional objector—*e.g.*, someone who gets paid professionally to object to class actions— and indeed routinely raises objections. Indeed, this Court dealt with Mr. Frank as an objector in the *In re Online DVD-Rental Antitrust Litig.* Case. Although he vehemently denies being a professional objector, in an affidavit to the district court, Frank proudly declares that, even though he is a lawyer, he does not earn legal fees representing his objector clients—instead, he admits that he is paid by anonymous **donors** to his non-profit law firm to object to and unravel large class action settlements. *See* ER301 at ¶ 12. The more he objects successfully, the more these anonymous donors apparently will give him money. *Id.* The fact that he represents clients pro bono is hardly a feather in his cap—it underscore the fact that this appeal is driven not by the clients or the parties, but by the political agenda and interests of those faceless financiers.

> Pursuant to these terms, class members may recover the entirety of their losses as well as achieve the additional benefit of the credit. As evidenced by the record, this case has been hotly contested over a period of several years. Understandably, class counsel put in a significant number of hours in order to achieve a beneficial result for the class. So long as the requested amount fits within the appropriate method for determining reasonable attorneys' fees, the Court can find no other basis for finding the requested fees to be unreasonable. Based on these considerations, the Court does not find that class counsels' requested fees are out of proportion to settlement achieved.

ER30-31.

Regarding the *cy pres* distribution, the court found the proposal was proper and appropriately tailored to further the remedial purposes of the statutes underlying this lawsuit. ER24-25. The court rejected Perryman's argument that some lawyers in this case having graduated from the University of San Diego Law School created a conflict of interest. ER26-27. The court further found that the *cy pres* benefit would be national in scope. ER28-29. Finally, the court found that the alternative allocations, including distributing the unclaimed funds to Perryman and other class members who submitted a claim, would result in an inappropriate windfall that would not benefit absent class members as much as giving the money to the universities to further research into internet privacy rights. ER29.

The district court found that CAFA section 1712 did not apply because this was not a "coupon settlement." ER23. The court observed that the "primary" recovery in the case was the $12.5 million cash damages fund and that the cash fund, combined with the $20 credits, conferred "real and substantial value" on the

class "in relation to [their] injuries." ER23-24, ER35. The $20 credits were "secondary" relief, which were not coupons as CAFA envisioned, but actually *benefit of the bargain* damages "narrowly tailored to reflect the nature of Plaintiffs' allegations," and were thus intended to "serve[] as a replacement for the $15 'Thank You' gift credit that led to [class members'] allegedly unauthorized entry into the membership programs." ER23-24, ER35.

The district court further noted that it had conducted "rigorous scrutiny" of the $20 credits and found that they were not coupons in the typical sense because they were not "*discounts*…where class members are required to purchase the products and pay the difference between full and coupon-discounted price." (quoting *Shames v. Hertz Corp.,* 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)(emphasis in original) ER23. Rather, the court noted that the $20 credits were tantamount to vouchers for free products, could be used to purchase entire items under $20, and were fully transferrable. ER19, ER24.

In addition to calculating the attorneys' fees under the percent-of-fund method, the court also found class counsel's fees and expenses reasonable under the lodestar method. ER36. The court awarded fees of $8,650,000 and out-of-pocket expenses of $200,000. ER35.

Rather than accept the district court's well-reasoned decision, Perryman appealed the final approval order. ER316.

**F.     The District Court Again Rejects All Of Perryman's Objections After A Second Full Fairness Hearing.**

While Perryman's appeal was pending, this Court was also considering an objection to a class action settlement raised by Perryman's counsel on his own behalf in another matter. The Court deferred consideration of this case pending resolution of *DVD–Rental Antitrust*—in which then-objector Frank argued that the gift cards received by class members were coupons subject to CAFA. ER660. After reaching a decision in *DVD–Rental Antitrust,* the Court remanded the current case to the district court for further proceedings consistent with *DVD–Rental Antitrust*. ER661-663.

While the case was on appeal, it was transferred to the calendar of Judge Cynthia Bashant in the Southern District of California. Dkt. 295. On May 21, 2015, Judge Bashant issued an Order Setting Briefing Schedule, allowing the parties to file supplemental memoranda and replies in support of the Motion for Final Approval of Class Action Settlement and Plaintiffs' Unopposed Motion for (1) Attorney Fees and Costs and (2) Incentive Awards and allowing Mr. Perryman to file a supplemental memorandum in opposition. Dkt. 302. The parties submitted supplemental briefing, and Judge Bashant held a second fairness hearing on July 27, 2016. *See* Dkts. 326 and 327.

On August 9, 2016, the district court issued a ***second*** final approval order, having reconsidered the settlement in light of *DVD-Rental Antitrust* and adopting

and reinstating the Judge Battaglia's final approval order. ER9. In so holding, the district court found that the merchandise codes "are not discount coupons; they are $20.00 that can be used for or toward the purchase of any on-line item." ER5. The district court went on to note that this settlement is *superior* to the one in *DVD-Rental Antitrust* because, here, "the class members have expressed a desire to have and an interest in getting $15.00 off their next purchase. That is what made them a member of the class." ER5. "Furthermore, the settlement also involves a cash payment as well as a merchandise credit, so that any class members who were wrongfully charged can be made whole." ER5.

Like Judge Battaglia before her, Judge Bashant also found that the attorneys' fees requested were fair and reasonable both under the percentage of the recovery *and* the lodestar calculation. ER8. She further found that the positive multiplier of 2 was deserved:

> The attorneys had a great deal of experience in class action litigation and took a case that was largely of first impression. The case involved the automatic enrollment of individuals in Reward Programs, an area of class action litigation that had not been explored before. The case was taken on a contingency fee basis and has required the lawyers to "float" the costs and attorneys' fees for seven years now, at great risk to them. Finally the attorneys have achieved excellent results for the class—class members to both their "Thank you" gift and their money back from the automatic enrollment.

ER8. Based on this analysis, the court again approved fees of $8,650,000 and expenses of $200,000. ER9.

16

Mr. Perryman and his counsel filed a second notice of appeal on September 6, 2016. ER38.

## SUMMARY OF THE ARGUMENT

The district court has now twice approved the settlement of this complex class action as fair, adequate and reasonable. The settlement provides a non-reversionary $12.5 million damages fund and a $20 merchandise credit for each class member to replace the $15 gift code they requested. The district court found that the class relief was "narrowly tailored" to the allegations and conferred a "substantial benefit" on the class. The court has also twice awarded fees of $8.65 million both as a percentage-of-recovery *and* based upon a lodestar at the time of settlement of $4.25 million.

Perryman takes issue with the value and destination of the *cy pres* and challenges the amount of class counsel's fees when calculated under the percent-of-recovery method. Perryman's contentions fail for a variety of reasons:

*First*, the *overall* value fairness, adequacy and reasonableness of the settlement has never been disputed. Perryman's collateral attacks on isolated features or imperfections of the settlement are not grounds to reverse the district court.

*Second*, Perryman never identifies any clear error in the district court's factual finding that the *cy pres* funding for internet privacy and protection research

at three universities will benefit this national class of internet consumers. Instead, he raises irrelevant facts, changes the subject, or seeks new law entirely. These are facially specious and insufficient.

**_Third_**, in attacking counsel's fee award, Perryman overlooks the district court's award of lodestar fees, singularly focusing on whether the $20 credits are "coupons" relevant to the court's percentage of recovery calculation. Even assuming _arguendo_ that CAFA applied here, section 1712(b) of the statute affirmatively **_authorizes_** lodestar fees in settlements that include non-coupon, non-injunctive pecuniary relief—like the cash fund in this case. Thus, the district court properly applied the lodestar-plus-multiplier method and from that concluded that the fees were fair and reasonable. Perryman ignored plaintiffs' discussion of lodestar and its propriety even under CAFA—he has thus waived this issue on appeal.

**_Finally_**, the district court's percent-of-recovery award of fees was also correct because the $20 merchandise credits are not coupons under CAFA. The district court found that the $12.5 million cash damages fund plus the $20 credits were "narrowly tailored" damages that replaced the money and $15 gift codes that every class member requested and lost, and can be used to purchase whole products. The credits are good for $20 worth of **_free_** merchandise from Provide Commerce, which every class member demonstrably valued. They are not the kind

of small discounts on expensive items that would enrich the defendants; nor are the credits giveaways of products that the class members have not been shown to want. The Supreme Court and Ninth Circuit have long held that an award attorneys' fees is based upon the *entire* value of the fund and not just the portion used or claimed by absent class members. Accordingly, the district court properly valued the entire fund.

Perryman is conspicuously silent as to what legal standard the district court misapplied, or how its findings were clearly erroneous. In short, Perryman does nothing more than *disagree* with the district court's conclusions. That is simply not enough to demonstrate that the court committed a clear abuse of discretion. For these reasons, this Court should affirm.

## STANDARD OF REVIEW

It is well established that a district court's approval of a class action settlement will only be set aside upon "a strong showing that the district court's decision was a clear abuse of discretion." *Lane v. Facebook*, *Inc.,* 696 F.3d 811, 818 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026-27 (9th Cir. 1998)). This Court's "review of a fairness determination is extremely limited, and [it] will set aside that determination only upon a strong showing that the district court's decision was a clear abuse of discretion." *DVD-Rental Antitrust*, 779 F.3d at 948 (internal quotation marks omitted). The Ninth Circuit has

"repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Hanlon*, 150 F.3d at 1026-27.

The most crucial thing before this Court is the record on which the district court based its decision—if that supports the district court's final approval order, then it should be upheld even if the panel members personally disagree with the district court's rationale. *See Hanlon*, *supra* (holding that "[a]lthough the district court's findings are almost conclusory, the record provides more than adequate foundation upon which to reach our conclusions. There is no value to be served in remanding this case for the entry of further self-evident findings.").

## ARGUMENTS AND AUTHORITIES

### I. THE DISTRICT COURT'S FINDING THAT, TAKEN AS A WHOLE, THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE HIGHLIGHTS WHY THIS COURT SHOULD AFFIRM.

Rule 23(e) requires a district court to determine whether a settlement is fair, adequate and reasonable. "It is the settlement, taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1025 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

Here, the district court properly weighed the *Officers for Justice* factors: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625. The district court accordingly held that the relief to the class was fair, adequate and reasonable, and conferred a substantial benefit in light of the value of the claims being released:

> [T]he $20 credit in addition to the cash reimbursement fund provides fair, reasonable, and adequate relief to class members based on the nature of Plaintiffs' claims and status of the case.
>
> ….
>
> Based on the nature of the claims and the alleged harms, the Court concludes that [$12.5 million] cash fund reimbursement combined with the automatic $20 credit provided to every class member offers real and substantial value in relation to class members' injuries, and that the settlement as a whole is fair, reasonable, and adequate.

ER22-24, ER9. The district court concluded that, based upon *Officers for Justice* and *Hanlon*, the settlement taken as a whole was fair, adequate and reasonable. *See* ER34-35 (making enumerated findings).

Before determining the merits of Perryman's objection to the settlement, this Court remanded the matter so that the district court could determine whether CAFA applied to the settlement in light of the Court's decision in *DVD-Rental Antitrust*. Upon considering *DVD-Rental Antitrust* and the terms of the settlement,

the district court held that CAFA did not apply and that the settlement should be approved. ER4-5.

## II. THE DISTRICT COURT PROPERLY VALUED THE SETTLEMENT AND CORRECTLY DETERMINED THAT CAFA DOES NOT APPLY.

### A. The Court Should Reject Perryman's Assertion That The District Court Failed To Consider The Interests Of Absent Class Members.

Perryman begins his legal argument with a red herring, implying that the district court did not scrutinize the settlement closely enough because—in other cases not before the court—the interests of class counsel diverge from the interests of the class, which may cause counsel in those cases to "'urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.'" Opening Brief of Appellant Brian Perryman ("Brief" or "Br.") at 26. Perryman dedicates little space to this argument in his Brief because he knows there is no evidence that the settlement reached in this case was "a low figure" or "less than optimal." In fact, the opposite is true. The class members were able to file claims to receive a ***full refund*** of their out-of-pocket expenses. Then, on top of their out-of-pocket damages, they also automatically receive a $20 merchandise credit to compensate them for the $15 coupon they were previously offered but may not have received. In short, class counsel negotiated a settlement that allows class members to be made whole and then some.

Perryman ignores the hard work and exceptional results achieved by class counsel because his true purpose is to further a political agenda that seeks to eradicate class actions and discourage counsel from representing class plaintiffs by stonewalling their attempts to collect fees that comport with this Court's precedent. The political agenda of Perryman and his counsel are not a proper basis for an objection.

## B. Perryman's Argument That The Court Awarded Attorneys' Fees Solely Based On The Percentage-Of-Fund Method Is Untrue.

Perryman ignores the Court's lodestar calculation and determination that a 2.1 multiplier is appropriate in an effort to distract this Court with the irrelevant argument of whether the merchandise credit constitutes a "coupon" under CAFA and, if so, whether attorneys' fees were properly calculated under section 1712(a). But section 1712(a) of CAFA is inapplicable here because it applies to coupon only settlements, not to settlements like this one that provide cash in addition to coupons. Thus, all of Perryman's objections based on his assertion that the merchandise credits constitute coupons are irrelevant and should be disregarded.

CAFA section 1712(b) expressly authorizes the lodestar fee awarded in this case. As the statutory language Perryman quotes and then ignores in his Brief demonstrates, even when "a proposed settlement in a class action provides for a recovery of coupons to class members," if "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any

attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." Br. at 5-6.

Indeed, Class counsel specifically requested that their fees be approved under ***both*** the lodestar method—which would satisfy the strictures of section 1712(b)—and the percentage of fund method—which is what Perryman challenges under section 1712(a). *See* ER502, ER509, ER650 at n. 12; ER252-254, ER256-258, ER268-270, ER291 ("[Lodestar] is an option for the court,. . . even if there are concerns about the nature of the vouchers.")). [7] The district court approved the fees of class counsel under both calculations accordingly—not just the one challenged by Perryman on appeal.

Perryman raises no legal argument that the lodestar calculation was applied incorrectly or is improper. In fact, the only place the term "lodestar" appears in the legal argument portion of Perryman's Brief is on page 27, where he claims it is "reversible error to calculate fees on the face value of coupons, even when the requested fee is less than lodestar." Br. at 27 (citing *In re HP Inkjet Printer Litigation ("Inkjet")*, 716 F.3d 1173, 1179 (9th Cir. 2013)). But, as with much of

---

[7] Any other reading of section 1712(b) would ignore the word "any" in that subsection, ignore section 1712(b) altogether, or make it redundant with subsection (a) or (c). Interpreting the statute in such manners would, of course, be contrary to all jurisprudence governing statutory construction. *See, e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257-58 (1993) (giving every provision unique intended meaning and refusing to render any provision "superfluous").

Perryman's Brief, the above citation to *Inkjet* is inaccurate. In fact, the word "lodestar" does not appear on page 1179 of the *Inkjet* decision. And a few pages later, where this Court ***does*** discuss section 1712(b), its statements directly demonstrate the futility of Perryman's objection here. *See id.* at 1184 ("[T]he legislative history of § 1712(b) confirms the majority's understanding of § 1712(b)—a district court may award lodestar fees under subsection (b)(1) but only where the settlement is based 'in part' on coupon relief" and in part on non-coupon relief).[8]

It is no wonder Perryman and his counsel want to misdirect the Court's attention to a different discussion in the *Inkjet* decision five pages earlier instead of candidly admitting that the district court's decision awarding attorneys' fees based on the lodestar method in this case falls squarely within this Court's binding

---

[8] The *Inkjet* Court noted that the CAFA Senate Report is instructive, stating:

> In some cases, the proponents of a class settlement involving coupons ***may decline to propose that attorney's fees be based on the value of the coupon-based relief***[.]
>
> Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action[.]
>
> ***Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief.*** As is stated on its face, nothing in this section should be construed to prohibit using the "lodestar with multiplier" method [.]

716 F.3d at 1184 (quoting S. Rep. 109-14 (2005) at 30-31) (emphasis added).

precedent. Instead, Perryman buries his head in the sand, ignoring the fact that the plain language of CAFA section 1712(b) contemplates that the district court may use the lodestar method as an alternative to valuing the coupon relief under section 1712(a) where there is also a direct pecuniary benefit to the class—as is indisputably the case here.

In addition to being an authorized method of calculating fees under CAFA, the lodestar method is independently proper here because the litigation has societal and other non-quantifiable benefits, as recognized by the legislatures' inclusion of fee shifting provisions in the statutes underlying plaintiffs' claims.[9] *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class.") As Judge Sneed noted, "[l]odestar calculations may be required under circumstances in which a percentage recovery would be either too small or too large in light of the hours devoted to the case." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1312 (9th Cir. 1990) (concurring); *see also Hanlon*, 150 F.3d at 1029 (recognizing the Ninth

---

[9] This case was brought, *inter alia*, under fee-shifting statutes such as the California Consumer Legal Remedies Act, Cal. Civ. Code § 1780.

Circuit has affirmed two separate methods for determining attorneys' fees in a class action settlement: the "percentage of the fund" method or the "lodestar" method).

Considering the unambiguous language of CAFA, this Court's decision in *Inkjet*, and the fact that lodestar calculations are "de-coupled" from the class recovery, *see In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d at 821, there can be no doubt that the fees awarded by the district court as calculated under the lodestar/multiplier method are supported and proper.

The Ninth Circuit standard for calculating lodestar fees is also easily satisfied here. It involves a multifold analysis that considers the qualitative direct benefit to the class, the non-monetary and societal benefits, the time, money and effort class counsel invested, the expertise needed, the riskiness of the litigation, and the fees awarded in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (outlining relevant factors).

Here, plaintiffs provided an extensive record demonstrating that:

- The results were excellent in light of the risks: a $12.5 million damages fund that would pay claimants up to 100 percent of their damages and a $20 credit to replace the "$15 off" gift code they initially accepted.

- The opinion of Judge Infante (Ret.) about the difficulty of the case, the importance of the settlement, the fairness of the settlement, and the relative value of the consideration.

- Class counsel invested thousands of attorney and paralegal hours and over $200,000 into the case conducting extensive discovery all over the

country.

- Class counsel's hourly rates were reasonable and within the reasonable range of rates charged for similar work.

- This litigation terminated a scam that was enrolling an average of 400,000 people each year.[10]

- Plaintiffs faced a serious risk of not gaining class certification.

- Comparable cases resulted in similar fee awards.

*See* ER502, ER509, ER524-532, ER537-547, ER553-581, ER586-599, and ER606-623.

This evidence tracked the Ninth Circuit standard for lodestar fees, as the district court confirmed, finding that class counsel's lodestar is "presumptively reasonable" and that a "positive multiplier of 2 is appropriate." ER7-8. The district court noted that the case was one "largely of first impression" that class counsel litigated for several years on a contingency fee basis and "achieved excellent results for the class—class members got both their 'Thank you' gift and their money back from the automatic enrollment. Therefore, the Court finds the requested attorneys' fees are reasonable ***both*** under a percentage of the recovery and a lodestar calculation." (emphasis added). ER8*; see also* ER36.

This determination was the culmination of several findings, including:

---

[10] This point was further credited by lead defense counsel. ER269.

[T]he relief offered by the $20 credits serves a specific purpose that is narrowly tailored to reflect the nature of Plaintiffs' allegations, specifically class members will receive a usable $20 credit of the type that was offered by the websites initially and subsequently caused them to be enrolled in the membership programs. ER24.

…

In this instance, class counsel has certainly achieved a favorable result for the class members. As previously noted, there is a significant cash fund for class member claimants plus automatic $20 credits for every class member that add significant value to the overall settlement award... class members may recover the entirety of their losses as well as achieve the additional benefit of the credit. ER30.

…

As evidenced by the record, this case has been hotly contested over a period of several years. Understandably, class counsel put in a significant number of hours in order to achieve a beneficial result for the class. ER30-31.

…

So long as the requested amount fits within the appropriate method for determining reasonable attorneys' fees, the Court can find no other basis for finding the requested fees to be unreasonable...the Court does not find that class counsels' requested fees are out of proportion to settlement achieved. ER31.

…

[T]he parties had nearly completed discovery including, but not limited to, the exchange of a large number of documents, numerous depositions, and expert disclosures…there are no governmental objectors; and…less than a fraction of one percent of the class objected to the settlement. ER34-35.

With all this evidence in mind, it is apparent that the district court's award of fees with a 2.1 lodestar multiplier was well within its discretion. Notably, the 2.1

multiplier did not account for the hours spent on final approval, responding to Perryman's objections or two rounds of appeals. ER8 at n. 2. In the Ninth Circuit, the acceptable range of multipliers is 1.0-4.0. *Vizcaino*, 290 F.3d at 1052 and n.6. Thus, for a large class action litigation such as this, a 2.1 multiplier is relatively conservative. *See id.* (approving **3.65** multiplier).[11]

In addition to all the reasons why the district court's lodestar determination should be affirmed, it should also be approved by this Court because Perryman waived the issue. In order to preserve an argument for appeal, one must "specifically and distinctly" raise the argument before the district court and again in one's opening brief; otherwise it is waived. *See United States v. Kama,* 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."); *Schwartz v. Citibank, N.A.*, 50 Fed. App'x 832, 835 (9th Cir. 2002) (holding that a

---

[11] *See also Milliron v. T-Mobile USA*, No. 07 Civ. 10329 (RJS), 423 Fed. Appx 131, 135 (3d Cir. 2011) ("we have approved a multiplier of **2.99** in a relatively simple case"); *City of Livonia Emples. Ret. Sys. v. Wyeth*, 2013 U.S. Dist. LEXIS 113658, 11 (S.D.N.Y. Aug. 7, 2013) (lodestar multiplier of **3.45**); *In re Cadence Design Sys. Sec. & Deriv. Litig.*, No. C-08-4966 SC, 2012 U.S. Dist. LEXIS 56785, at *5 (N.D. Cal. April 23, 2012 (awarding counsel "**more than 2.88** times its lodestar amount"); *Been v. O.K. Indus.,* No. CIV-02-285-RAW, 2011 U.S. Dist. LEXIS 115151, at *11 (E.D. Okla. 2011) ("reporting average **multiplier of 3.89** in survey of 1,120 class action cases"); *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the **3-4** range are common in lodestar awards for lengthy and complex class actions") (emphasis added in all).

specific challenge to major feature of class settlement not raised before district court was waived on appeal). Here, Perryman failed to specifically and distinctly contest any of the issues surrounding the lodestar analysis noted above—not the request for the calculation, not the basis for the request under CAFA, not the evidence in support of the request, not the specific benefits for the class or the non-monetary societal benefits, not the effort and investment it took just to get this settlement, the complexity of the case, the fees in other cases, nor the risks involved. Therefore, Perryman has waived these issues on appeal. *Id.*[12]

### C. The District Court Properly Applied This Court's Decision In *DVD-Rental Antitrust*.

Following Perryman's first appeal from a district court's order overruling his objections, this case was remanded to the district court to consider the effect of a case spearheaded by Perryman's counsel in this matter, *DVD-Rental Antitrust*. That case involved a class of Netflix DVD subscribers, including Perryman's attorney, Frank, who challenged as anticompetitive an agreement between defendant Netflix and defendant Walmart, wherein Netflix agreed to refrain from selling DVDs and Walmart agreed to curtail its DVD rental business. *DVD-Rental Antitrust*, 779 F.3d at 940. Plaintiffs ultimately reached a settlement with Walmart,

---

[12]Out of an abundance of caution, and without waiving the *waiver* argument, Plaintiffs address Perryman's objection to counsel's fees on the merits below in order to properly make their arguments for the record.

which included a "Cash Component" and "Gift Card Component," together valued at $27,250,000. *Id.* Class members were required to file a claim form online or by U.S. Mail to obtain a $12 gift card. *Id.* at 941. Alternatively, class members could submit a claim by U.S. Mail for the cash equivalent if they provided the last four digits of the Social Security numbers. *Id.* District Court Judge for the Northern District of California, Phyllis J. Hamilton, approved the settlement and also granted plaintiffs' motion for attorneys' fees seeking 25 percent of the settlement and valuing the gift cards at 100 percent of their $12 face value. *Id.* at 949-950. Objectors in the case (including Mr. Frank) appealed, contending that the district court abused its discretion by concluding that the gift cards were not "coupons" under CAFA. *Id.* at 949-950; *see also* 28 U.S.C. §1712(a).

The Ninth Circuit soundly rejected the objectors' arguments, finding that "[t]he district court correctly held that the Walmart gift cards in this settlement do not constitute a coupon settlement that falls under the umbrella of CAFA." *Id.* at 950. Because Congress did not define "coupon" in the statute, the Ninth Circuit conducted an extensive review of CAFA's legislative history as part of its analysis and concluded that Congress never intended CAFA to apply to gift cards such as those at issue here. *Id.* at 950. Instead, CAFA's legislative history demonstrates a congressional intent to eliminate valueless "coupon settlements" whereby "'class members receive nothing more than promotional coupons to purchase more

products from the defendants.'" *DVD-Rental Antitrust*, 779 F.3d at 950 (quoting S. Rep. No. 109-14, at 15 (2005), 2005 U.S.C.C.A.N. 3, 16.). The *DVD-Rental Antitrust* Court noted that the Senate Judiciary Committee's Report cited 29 examples of "problematic coupon settlements," none of which remotely resemble the relief offered here or in the Netflix case:

> The report cites and criticizes coupon settlement awards that provide class members with "$30 to $40 discounts" on a future cruise, "a $5 to $10 voucher good for future purchases of particular computer hardware or software products", "$1 off every subsequent $5 purchase" at a chain of restaurants, "a 30 percent discount on selected products" during a one-week time period, $55 to use on a purchase of a new crib from a defendant crib producer accused of making defective cribs, "$1.25 off a $25 dollar [video] game", and so on.

*Id.* at 950 (quoting from S. Rep. No. 109-14, at 15-17).

The Ninth Circuit concluded that the $12 Walmart gift card settlement materially "differs from the settlements that drew the attention of Congress." *Id.* "Affording over 1 million class members $12 in cash or $12 to spend at a low-priced retailer does not leave them with 'little or no value.'" *Id.* "Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money and can choose from a large number of potential items to purchase." *Id.* at 951.

On remand, the district court here concluded that "[s]imilar to the *DVD-Rental Antitrust* settlement, the settlement in this case allows members to purchase any number of products from several different websites, many of which do not require the class member to spend any of his own money. They are not discount coupons, they are $20 that can be used for or toward the purchase of any on-line item." ER4-5. Moreover, the district court found this settlement to be ***stronger*** than *DVD-Rental Antitrust* because, in this case it is undisputed that every class members requested the "Thank You" give of $15 off their next purchase. ER5. "Therefore, ***unlike any other settlement the Court has been able to find***, ***this settlement was specifically tailored to the harm suffered by the class members*** and the interest they had in receiving this "Thank you" gift." ER5. (emphasis added).

The district court is correct that the settlement in this case is superior to the one provided in *DVD-Rental Antitrust*. In the prior case, the "Cash Component" of the settlement funded only "attorneys' fees and expenses, costs of notice and administration, and incentive payments to class representatives." *DVD-Rental Antitrust*, 779 F.3d at 940. The remaining amount of the settlement fund "constituted the Gift Card Component and was used to provide class members with either gift cards or, if they so chose, the cash equivalent of a gift card." *Id.* at 940–41. By contrast, the cash portion of the settlement fund in the present case allowed

every class member to receive a full cash payment for their out-of-pocket expenses upon filing a claim and no portion of the cash fund will revert the defendants. Class members did not have to choose cash *instead of a gift card* to receive cash in this case.

The merchandise credit about which Perryman complains is an added benefit designed to compensate class members for a promise that they would receive $15 off a future purchase. The amount was increased to $20 to ensure that they could obtain an item for free—including a $19.99 bouquet of flowers from proflowers.com. Unlike in *DVD-Rental Antitrust*—where the gift cards were meant to compensate class members for their actual damages—the merchandise credit in this case is designed to compensate class members for the coupon they requested. Because the gift cards were compensating class members for actual damages in *DVD-Rental Antitrust*, it made sense to give class members the option of choosing cash instead. Allowing that same option here, however, would result in a windfall to class members because they were already given the opportunity to be *paid in full* for their out-of-pocket damages by filing a claim. Thus, giving them a merchandise credit for $20 as compensation for the $15 coupon they were promised is appropriately tailored relief.

For the relief in *DVD-Rental Antitrust* to be as complete as that achieved here, the class members in that case would have needed to receive not only the

opportunity to be paid back in cash, but also an additional gift card or merchandise credit that on top of the cash payment. To say the least, Perryman's assertion that the settlement in this case awarding ***both*** a cash payment compensating class member for their out-of-pocket damages plus a merchandise credit is somehow inferior to the settlement approved by this Court in *DVD-Rental Antitrust* is specious, as the record demonstrates. *See*, e.g., ER5 (noting that "the settlement involves a cash payment as well as merchandise credit, so that any class members who were wrongfully charged can be made whole" and that the "settlement was specifically tailored to the harm suffered by the class members").

In order to argue that the merchandise credit in this case falls within the rubric of CAFA, Perryman ignores key aspects of this Court's *DVD-Rental Antitrust* decision. Perryman's Brief conspicuously omits discussion of the types of coupon settlements that Congress sought to address with CAFA. That is because the settlement in this case, like the one discussed in *DVD-Rental Antitrust*, is more flexible than any of the coupon settlements Congress considered in adopting CAFA. *See DVD-Rental Antitrust*, 779 F.3d at 950-51. As this Court explained, "[e]ven if the gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report." *Id.* at 951. The same is true of the $20 merchandise credits here.

36

Perryman ignores the examples of "problematic coupon settlements" cited by the *DVD-Rental Antitrust* Court*, see id.* at 950—because he knows this case is not analogous—and instead seeks to apply CAFA on the basis that the $20 merchandise credits are not *identical* to the $12 gift cards in *DVD-Rental Antitrust*. Br. at 28 (claiming that "*Online DVD* expressly confined its holding to Walmart.com gift cards 'without making a broader pronouncement about every type of gift card that might appear'"). But *DVD-Rental Antitrust* did not hold that all terms must be identical to the gift cards at issue there to fall outside of CAFA. Instead, this Court recognized that the "*[d]istrict courts* are more than capable of ferreting out the deceitful coupon settlement that merely co-opts the term 'gift card' to avoid CAFA's requirements." *Id.* at 952 (emphasis added). That is exactly what the district court has done here—twice.

While recognizing some differences in the terms of the merchandise credits at issue in the two cases, taking the circumstances as a whole, the district court concluded, again, that "this settlement was not a coupon settlement subject to the strictures of section 1712." ER5. That decision should be affirmed.

### D. The District Court Correctly Concluded That The Merchandise Credit In This Case Is Not A Coupon Under CAFA.

Because the issue of whether the merchandise credit constitutes a coupon is a mixed question that turns on evaluating the evidence in the record under a general legal principle, the issue is predominantly one of fact and is reviewed for

clear error. *Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995). As the district court noted, "although CAFA defines various other terms, it does not define what constitutes a 'coupon.'" ER22. It is, therefore, left to the trial court to determine the applicability of the term based on the factual record before it and the totality of all circumstances. *Rosenfeld v. Comm'r of Internal Revenue*, No. 11-73362, 2013 U.S. App. LEXIS 16461 at *3 (9th Cir. 2013). This Court cannot overturn the district court "simply because it . . . would have decided the [issue] differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985). Rather, it must affirm if the district court's conclusion is "plausible . . . in light of the [entire] record." *Id.*

Perryman's factual assertions regarding the coupons do not reach the threshold of demonstrating clear error. Among other things, he argues that the merchandise credits are coupons because they have three blackout windows during the calendar year and expire in one year. Br. at 29-30. But Judge Bashant took these differences into account and concluded that this not a coupon settlement:

> This Court is mindful that this case differs from the *DVD-Rental Antitrust* settlement in two important respects: the merchandise credits expired after one year and there were black-out dates for use of the credits. The Court recognizes that this militates against construing the merchandise credits as gift cards, but given the other factors, particularly the fact that these merchandise credits were very similar to the "Thank You" gifts that class members were trying to obtain, the Court finds this settlement was not a coupon settlement subject to the strictures of section 1712.

ER5.[13]

Perryman's implicit premise that people only send flowers, chocolates, gift baskets, food, cards, stationary, teddy bears and sweet things during Christmas, Mother's Day, and Valentine's Day is also unsupported in the record. For example, one of Proflowers.com key business models is to send email reminders to its customers so they remember to send birthday flowers to spouses and loved ones. The blackout dates are a practical limitation as the district court noted. They were necessitated by the potential deluge of additional traffic which the codes would entail, and which would overwhelm the supply chain during peak times. *See* ER267; ER24 at n.6. Thus, the demand for the blackout dates helps ***confirm***, rather than detract from, the substantial value of the $20 credits, as the evidence indicates Provide believes class member will redeem the merchandise credits at a high enough rate to cause such a problem.

Perryman's assertion that the merchandise credits can "not be used with existing discounts" is flat-out wrong. The $20 merchandise credits ***can*** be used with discounts already available on products on any one of the websites—which there frequently are. *See* ER250-251; ER19. What they are not "stackable" with are ***other codes***—*i.e*., discounts offered off-site intended to draw people to the website.

---

[13] The parties spent hours with the mediator to reduce the number of blackout dates. ER268-269.

But that was true of the original $15 gift codes as well. The limitation is due to the fact that the "checkout" pages on the websites—like nearly all e-commerce shopping sites—are programmed to only accept one code per purchase.

Perryman's objection based on the fact that some class members in *DVD-Rental Antitrust* chose gift cards instead of cash is equally unavailing. Indeed, in *DVD-Rental Antitrust*, Perryman's same counsel argued that the Walmart gift cards were not like cash in that case because he claims they were less valuable than the Rite Aid gift cards examined in *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 255–56 (E.D. Pa. 2011). *See DVD-Rental Antitrust*, 779 F.3d at 951 n.9. Specifically, Frank contended that the Rite Aid gift cards had cash value, but the Walmart gift cards did not. *See id.* This Court rejected Frank's argument, noting that the Rite Aid gift cards were ***not*** redeemable for cash. *Id.* The Court further explained that "to the extent [gift cards] have cash value, it is because they are equal to a certain dollar amount and can be spent on a variety of useful goods." *Id.* The same is true of the merchandise credit in this case.

Perryman's assertion that the district court's ruling conflicts with the Seventh Circuit law should also be rejected. *See* Br. at 28, 31, 33. This is another tactic Perryman's counsel has used before with failure. In *DVD-Rental Antitrust*, for example, Frank argued that the Seventh Circuit's decision in *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006), demonstrated that

the Walmart gift cards were actually coupons under CAFA. This Court expressly rejected his assertion. *See DVD-Rental Antitrust*, 779 F.3d at 951-52 ("Our conclusion that the settlement does not constitute a 'coupon settlement' within the meaning of CAFA does not conflict with the Seventh Circuit's decision in *Synfuel Technologies, Inc.*, 463 F.3d at 654, as Frank suggests."). "Unlike a pre-paid shipping envelope [in *Synfuel*], a gift card to walmart.com does not simply offer class members one type of complete product. It offers them a set amount of money to use on their choice of a large number of products from a large retailer." *DVD-Rental Antitrust*, 779 F.3d at 952. As in *DVD-Rental Antitrust*, there is no merit to Frank's attempt to analogize the flexible merchandise credit offered in the present settlement to the pre-paid envelopes addressed in *Synfuel*.

Having failed to convince this Court that *Synfuel* applies to cases like the present one, Frank changes tack and now contends a new Seventh Circuit decision should apply—*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).[14] *See*

---

[14] Perryman also ignores the fact that there are differences between Ninth Circuit law and Seventh Circuit law, and fails to explain why this court should reverse course. *Compare DVD-Rental Antitrust*, 779 F.3d at 953 ("The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.") *with Redman*, 768 F.3d at 630 ("The judge accepted the settlors' contention that the defendant's entire expenditures should be aggregated in determining the size of the settlement . . . But the roughly $2.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members.").

Br. at 31 (claiming "the district court's reading of *Online DVD* . . . conflicts with the Seventh Circuit's decision in *Redman*"). But even Frank admits that if *Redman* actually conflicts with *DVD-Rental Antitrust*, this Court cannot apply it at this time. *See* Br. at 43 ("As one panel cannot overrule another, Perryman preserves the issue for further review later.").

Perryman next asks the Court to adopt an overly broad definition of the term "coupon." *See* Br. at 32 (seeking to define "coupon" as a "'code . . . card, or advertisement that entitles the holder to a certain benefit, such as a cash refund or a gift.'"). In other words, under Perryman's definition, the Walmart gift cards in *DVD-Rental Antitrust* would qualify as coupons because they are a "code" or "card" that "entitles the holder to a certain benefit," including being able to choose "a cash refund" instead of the card or being able to use the card to purchase merchandise without having to pay for it—*i.e.*, receive "a gift." The definition Perryman proposes is overbroad, is not supported by the CAFA legislative history, and should be rejected.

The merchandise credits in this case are not "coupons" because, *inter alia*, they can be used to purchase many different products. *See DVD-Rental Antitrust*, 779 F.3d at 952 ("Like the gift cards to Rite Aid in *Reibstein,* part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the

ability to purchase one of many different types of products."). While *DVD-Rental Antitrust* did not specify how many items must be made available, here, class members can use their $20 credits to purchase ***any*** product on any one of ***four*** Provide Commerce websites: ProFlowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com, including marked down, bundled or discounted products. ER2-3. There are at least 15 to 25 products available for under $20 at any given time. ER228. Moreover, these are products that all class members have expressed an interest in purchasing in the past. ER5.

After initially arguing that even free merchandise can still be considered "coupons" under CAFA, Perryman next claims that the merchandise credits must be coupons under CAFA even under because class members allegedly will have to spend some of their own money on shipping and handling. *See* Br at 33-25. Perryman's argument fails on multiple grounds.

***First***, the district court considered this argument and found that, just as in *DVD-Rental Antitrust*, the merchandise credit is large enough for class members to purchase complete items, not just get a discount off a larger item, and therefore it does not require class members to spend additional money with defendants. ER4-5, ER47-48, ER24 at n.7.

***Second***, even assuming *arguendo* that Perryman's assertion is true, the *DVD-Rental Antitrust* gift cards would have presented the same issue because the

gift cards there "could only be used at the Walmart website." *See DVD-Rental Antitrust*, 779 F.3d at 941; *see also id.* at 951. Thus, shipping and handling charges would have applied to any items purchased with the gift cards. Moreover, in that case, class members only received $12 rather than the $20.

**Third**, as discussed in greater detail in Section II.C., *supra*, this case does not even vaguely resemble the "coupon" settlements discussed in *DVD-Rental Antitrust* that caused Congress concern when enacting CAFA. The concern raised by Congress when adopting CAFA is that class members would receive a small discount to purchase a large product and, in doing so, would have to pay money out of their own pockets only to the enrich defendant who wronged them in order to access the benefit offered in the class settlement. *DVD-Rental Antitrust*, 779 F.3d at 950 (quoting from S. Rep. No. 109-14, at 15-17) (citing examples such as $30-$40 discount on a future cruise).

Here, there is no evidence that defendants would keep the money charged for shipping and handling rather than spending that money on . . . shipping and handling. Indeed, online retailers who overcharge for shipping and handling run the risk of finding themselves defending class action lawsuits in this same Circuit. *See, e.g.*, *Reider v. Electrolux Home Care Prods., Inc.*, No. 8:17-cv-26, in the

United States District Court for the Central District of California.[15] These circumstances do not transform the merchandise credits into CAFA coupons or constitute error by the district court.

Likewise, Perryman's reliance on *Inkjet* is misplaced. *See* Br. at 33. Unlike the circumstances here, the settlement in *Inkjet* offered small discounts on a limited number of products that were marked up and expensive—*e.g.*, $2-$6 e-credits to buy $35-45 ink cartridges which were already priced $6 higher on defendant's website than other retailers' sites. *Inkjet*, 716 F.3d at 1179, n.6. The Ninth Circuit panel also concluded that, because *Inkjet* was a "coupon only" settlement governed by section 1712(a) of CAFA, the district court should have evaluated fees only on the redeemed coupons—not lodestar. *Id.* at 1180. Here, there are multiple items that class members can purchase under $20 and because the settlement also includes a $12.5 million cash fund from which class members can make reimbursement claims, even if CAFA did apply, the district court would still be

---

[15] The first paragraph of the Class Action Complaint in *Reider* alleges that shipping and handling charges "violated the Unfair Competition Law ('UCL'), Cal. Bus. & Prof. Code §§ 17200, et seq. and the Consumers Legal Remedies Act ('CLRA'), Cal. Civ. Code §§ 1750 et seq. because, in contravention of established ethical principles, Defendant's shipping/handling charges were not reasonably related to Defendant's costs of delivering or shipping the items to consumers but instead greatly exceeded those costs." Available at https://www.classaction.org/news/electrolux-facing-class-action-over-shipping-and-handling-fees (last accessed on May 22, 2017).

permitted to analyze and approve all fees under section 1712(b) using the lodestar method, *see id.* at n.13, which is what the court did here. ER7-8; *see also In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) (holding a district court may award attorneys' fees based on lodestar under CAFA).

The rest of Perryman's cases are nonbinding and distinguishable. For example, none of the cases Perryman cites had non-reversionary cash funds or allegations that class members had requested a similar merchandise credit.[16]

Finally, Perryman's counsel returns to the same well of recycled, unsuccessful arguments for his assertion that the attorneys' fees awarded in this case are unduly preferential. Br. at 44-45. To support this assertion, Perryman argues that the merchandise credits are not worth their face value "given that holders of sets of Provide ***coupons*** find themselves unable to sell them on Ebay even at a 90% discount to face value." *Id.* (emphasis added). Notwithstanding Perryman's false analogy to a "coupon," this Court's precedent demonstrates that the inability to sell a gift card does not diminish its value. As this Court recognized

---

[16] *See,* Br. at 34, citing *Davis v. Cole Haan, Inc.*, No. C 11-01826 JSW, 2013 WL 5718452 (N.D. Cal. Oct. 21, 2013); Br. at 38, citing *Wilson v. DirectBuy, Inc.*, No. 3:09-cv-590 (JCH), 2011 WL 2050537 (D. Conn. May 16, 2011). *In re Dry Max Pampers Litigation*, 724 F.3d 713, 718-19 (6th Cir. 2013), which Perryman incorrectly contends requires discovery into redemption rates, Br. at 45, is not binding and is distinguishable, *e.g.*, class members were required to retain UPC codes for years to obtain a refund; class counsel did not conduct any discovery or even file a response to defendant's motion to dismiss. *Id.* at 718, 721.

at least two separate times in *DVD-Rental Antitrust*, the class members in that case were prohibited from selling the gift cards they received as part of the settlement. *See* 779 F.3d at 941 ("The gift card could only be used at the Walmart website and was freely transferrable, ***although it could not be resold***.") (emphasis added); *id.* at 951 (gift cards "are freely transferrable (though they cannot be resold on a secondary market)"). Thus, the lack of a secondary market for the merchandise credit does not impact their value.

Again ignoring binding precedent, Perryman argues that the fee award is improper because "the class's concrete recovery is $225,000" and not some larger amount. Br. at 45. But the fact that more class members failed to file claims does not diminish the hard work or value provided by class counsel in this case. Nor does it lessen the benefit to absent class members via the *cy pres* recipients' work. The Supreme Court has held that the entire benefit conferred is what is relevant to determining the fairness and value to the class as a whole, regardless of how many people make claims against the fund, how much goes to *cy pres*, or the amount of attorneys' fees if otherwise reasonable. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("[Absent class members'] right to share the harvest of the lawsuit upon proof of their identity, ***whether or not they exercise it***, is a benefit in the fund created by the efforts of the class representatives and their counsel") (emphasis added). This Court has also explained that, in circumstances such as this, many

people will not make claims and funds will go to *cy pres*, but that that does not diminish the value of the settlement or of class counsel's contribution. *Six (6) Mexican Workers*, 904 F.2d at 1311; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("[T]he entire [settlement] Fund, and not some portion thereof, is created through the efforts of counsel"). And more recently, as Perryman's counsel, Frank, well knows, this Court expressly held in *DVD-Rental Antitrust* that it is proper to calculate the "fee award as a percentage of ***the total settlement fund***" including amounts conferred via gift cards. 779 F.3d at 953 (emphasis added).

Because all of Perryman's objections to the award of attorneys' fees should be overruled for the reasons explained above, Appellees respectfully request that the district court's decision awarding fees of $8.65 million both as a percentage-of-recovery and based upon a lodestar of $4.25 million be affirmed.

## III. THE DISTRICT COURT'S FINDING THAT THE *CY PRES* MEETS THE NINTH CIRCUIT STANDARD OF PROVIDING A RELEVANT NATIONAL BENEFIT GOES UNREFUTED.

### A. The Cy Pres Meets The Ninth Circuit's Standard.

The practical reality in a class action is that often, whether due to human tendencies towards procrastination, inertia, or some other combination of factors, "[m]ost class actions result in some unclaimed funds." *Six (6) Mexican Workers,* 904 F.2d at 1307. In response "a court may employ the *cy pres* doctrine," borrowed

from the world of trust law, "to 'put the unclaimed fund to its next best compensation use, e.g., for the **aggregate, indirect, prospective** benefit of the class.'" *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2012) (citations omitted) (emphasis added).

This Court has explained that in order to serve its "next best" function, "*cy pres* distribution[s] must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* at 1039 (citing *Six (6) Mexican Workers*, 904 F.2d at 1307) (footnote omitted). In internet-related cases, this Circuit has expressed approval for *cy pres* recipients drawn from "any number of non-profit organizations that work to protect internet users from fraud, predation, and other forms of online malfeasance." *Id.* at 1039.

The parties heeded these instructions. Because areas of consumer online privacy and data security are constantly in flux due to rapid technological advancement and slow legislative response, the parties agreed that *cy pres* funds would best serve absent class members by funding academic research addressing the contours and methods of protection in this space. ER364. Courts of appeal have repeatedly approved of this type of *cy pres* program, so long as there is a sufficient connection between the research and the underlying litigation. *E.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21 (1st Cir. 2012) (approving *cy pres* funding of academic cancer research at Harvard and affiliated hospitals).

The district court found a sufficient nexus. ER29-30. Perryman does not levy a single, direct attack, looking instead to collaterally invalidate the *cy pres*.

## B. The University Affiliations Perryman Attacks Do Not Evidence A Conflict Of Interest.

Perryman hyperbolically contends that overlap between three lawyers out of the fourteen active ones in this case, and one of the three universities *cy pres* fosters an "intolerable" conflict of interest. This argument defies common sense, and it is unsupported in the evidentiary record and case law.

### 1. Perryman has no evidence of an actual conflict.

The district court correctly concluded as that there was no conflict, finding no "significant relationships with USD Law School beyond it being the alma mater of three attorneys out of the many associated with this case. There is no suggestion that counsel has any further relationship with the school than simply graduating from there." ER27.

Perryman offered no evidence that any attorney had any active participatory relationship with USD. Nor that any counsel stand to personally gain from funds going to USD. Perryman does not even suggest that they make it out to the occasional USD football game. The record is entirely devoid of even the slightest proof of undue influence arising from three counsel having attended more than ten years ago. *Id.*

### 2. No decision supports Perryman's position.

Perryman cites no case actually holding his way. Although he boldly asserts that the district court "depart[ed] from the considered opinions of *several* other courts," the court opinions to which he alludes are not to be found in his brief. Br. at 37. Indeed, he cites to no court opinion invalidating a *cy pres* award based upon the prior university affiliation of a lawyer or party to the litigation.

This Court's recent decision in *Facebook* wholly undercuts Perryman's argument. 696 F.3d 811 (*cert. pending*). There, the *cy pres* recipient was newly created for the purposes of the ***settlement***, and directed to "promote the cause of online privacy and security." *Id.* at 821. Three of the board members consisted of plaintiff's counsel, lead defense counsel, and a Facebook executive. *Id.* at 818 and 829. This Court affirmed the *cy pres* distribution over objectors' mere allegation of a conflict of interest, holding that the entity was not "categorically an improper" *cy pres* recipient. *Id. See also In re Pharma. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 30-32 (1st Cir. 2009) (class counsel's prior attorney-client relationship with the *cy pres* recipient was not a conflict absent additional evidence).

Avoiding *Facebook'* entirely, Perryman relies on a backwards reading of *Nachshin*. That suit involved AOL placing advertisements into people's emails in violation of their online privacy rights. The eventual *cy pres* recipients included

local Los Angeles shelters, Legal Aid Society, and Boys & Girls Clubs. 663 F.3d at 1040. This Court expressed its fear that "[w]hen selection of *cy pres* beneficiaries is ***not*** tethered to the nature of the lawsuit and the interests of the silent class members, the selection process ***may answer to the whims and self-interests of the parties, their counsel, or the court***." *Id*. at 1036 (emphasis added). Perryman's suggestion that ***any*** historical association between counsel and a *cy pres* recipient, no matter how long ago or how tenuous, justifies undoing the settlement entirely is not found in *Nachshin* or any other case. *Id*. at 1036-39.

Thus, this specious objection was rightly overruled.

## C. Perryman's Contention That The Universities Are "Too Local" Rests On False Factual And Legal Premises.

The district court found that "the overall impact from the proposed *cy pres* distributions will not be limited to San Diego. [Rather,] [a]ll internet users will benefit from the proposed funding of ideas and research relating to consumer protection." ER29. Yet, Perryman contends that because they are in San Diego, the universities are too ***local***. Br. at 47-49. This argument relies on a prevarication. The issue, as the First Circuit has noted, "is not the location of the recipient…it is whether the projects funded will provide 'next best' relief to the class." *In re Lupron*, 677 F.3d at 38.

Clearly needing a lifeline, Perryman contorts two decisions to support his proposition that university research programs cannot receive *cy pres* even if they

"theoretically would have a nationwide benefit to all consumers interested [in the case.]" Br. at 48 (citing *Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989) and *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625-26 (8th Cir. 2001)). This is not the law, and is both absurd and impractical. *See In re Lupron*, 677 F.3d at 38-41 (finding that Harvard labs in Boston can have a national impact on cancer research); *In re Universal Service Fund*, No. 02-MD-1468-JWL, 2013 U.S. Dist. LEXIS 80204 at *14 (D. Kan. June 7, 2013) (observing that spreading *cy pres* awards too thin among many recipients would diminish the benefit to absent class members).

Moreover, his cases simply do not support his position. Far from foreclosing university research programs as legitimate *cy pres* projects, the Seventh Circuit in *Houck* explicitly held that "[t]he two law schools, Loyola and the University of Chicago, **are in no way disqualified from being the beneficiaries of some _new_ appropriate cy pres use.**" 881 F.2d at 502 (emphasis added). The reason the circuit court rejected the university-oriented *cy pres* had nothing to do with their Chicago location. Rather, that court had previously rejected a plan to use *cy pres* to fund a stand-alone research center on antitrust law and policy because it found that the antitrust field was so flush with research funding that earmarking additional money via *cy pres* was akin to "carrying coals to Newcastle." 881 F.2d at 496-97.

Perryman never argues that the demand for academic research into the fields funded by the *cy pres* in this case is likewise oversubscribed.

*In re Airline Ticket Commission Antitrust Litigation* is simply irrelevant. There, the district court was offered no, and saw no, relationship between sending money to a collection of travel agents in Puerto Rico, or a grouping of law schools in Minnesota, and the underlying claims for overcharges to U.S.-based travel agents. 268 F.3d at 630.

Thus, if anything, the Seventh and Eighth Circuits' decisions highlight how the parties and the district court in this case got it ***right***.

### D. Perryman And Others Who Submitted A Claim Are Not Superior Cy Pres Recipients To The Three Universities.

Although he stands to recover all his damages, Perryman contends the court should award him ***more*** money out of the *cy pres* funds, in effect arguing that he is a better *cy pres* recipient than the universities the parties designated via settlement. Br. at 43. The district court correctly found that Perryman and other class members who submitted a claim were not superior recipients of unclaimed funds. ER29-30.

The courts that have confronted this issue have overwhelmingly rejected the argument that plaintiffs who receive their full out-of-pocket damages are wronged when a settlement designates residual funds for *cy pres* rather than additional payouts to claimants. *See In re Lupron*, 677 F.3d at 34-35 (approving *cy pres* distribution where all class members submitting claims had already been fully

compensated); *In re Pharma. Indus. Average Wholesale Price Litig.*, 588 F.3d at 25-26 ("The *cy pres* fund … is not taking damages away from the class members … [who can] claim and be paid their damages."); *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 705-06 (8th Cir. 1997) (upholding *cy pres* usage of remaining funds because claimants had already received all damages and "neither party ha[d] a legal right" to what remained). Even the American Law Institute, on which Perryman heavily relies, recognized that "[w]here class members *have* been fully compensated for their losses," the ALI policy preference simply "does not apply." *In re Lupron*, 677 F.3d at 32 (quotations omitted) (emphasis added).

Perryman principally relies on a Third Circuit case, *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2012), for the proposition that where a large portion of a fund goes to *cy pres* instead of class claims, then the settlement should not be approved. Br. at 52. Yet that court expressly *declined* to do the very thing Perryman insinuates, holding that:

> We think it unwise to impose . . . a rule requiring district courts to discount attorneys' fees when a portion of an award will be distributed *cy pres*. There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims. ***Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided***. Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.

*Id.* at 178. *See cf. Six (6) Mexican Workers*, 904 F.2d at 1311 (finding that small class claims often necessitate giving money to *cy pres* but awarding fees on entire benefit). Noting that counsel's fees should be cut only where there is sufficient evidence "that counsel has not met its responsibility to seek an award that adequately prioritizes a direct benefit to the class," the Third Circuit suggested reducing counsel's fees under the specific circumstances present in *Baby Products*, and expressly advocated the use of lodestar to ensure the fairness of class counsel's fees. *See* 708 F.3d at 178-79. Here, the district court found that the settlement is an excellent result that provides meaningful relief to the class, and also ***already used lodestar*** to determine that counsel's fees are reasonable.

Finally, Perryman claims that he has not been fully compensated because he should have also received punitive damages. Br. at 53. This is a non-starter. *Hanlon*, 150 F.3d at 1025; *Six (6) Mexican Workers, supra; Browning v. Yahoo! Inc.*, 04-01463, 2007 U.S. Dist. LEXIS 86266 at *6 (N.D. Cal. 2007) (gainsaying settlement compensation "is tantamount to complaining that the settlement should be 'better,' which is not a valid objection.").

In short, taken as a whole, this settlement is fair, adequate and reasonable. It provides a $12.5 million damages fund and compensates people for their request for $15 gift codes by giving them one third greater value in merchandise credits.

Thus, Perryman utterly fails to demonstrate, as is his burden, why the district court's conclusions are clearly erroneous and are a clear abuse of discretion.

## IV. THE AGS' MOTION FOR LEAVE TO FILE AN AMICI CURIAE BRIEF SHOULD BE DENIED.

Pursuant to Federal Rule of Appellate Procedure 29(a)(3)(B), a motion for leave to file an amicus brief must state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." The Motion for Leave to File Brief of Thirteen State Attorneys General as Amici Curiae in Support of Objector-Appellant and Reversal ("Motion") fails on both counts and should be denied.

### A. The Motion Is An Undesired Attempt To Bypass Established CAFA Procedures.

The proposed Brief of Thirteen State Attorney General as *Amici Curiae* In Support of Objector-Appellant and Reversal ("Amici Brief") is nothing more than an attempt to end-run CAFA procedures—procedures that none of these Attorneys General ("AGs") could be troubled to follow. While they now claim to be fulfilling their "responsibility to protect consumer class members under CAFA" with this Motion, the fact is *all* of the AGs were provided with notice of the settlement as required under CAFA and *none* of them bothered to timely respond. Motion at 4.

Indeed, the Defendants provided all state Attorneys General with the required CAFA notice on June 22, 2012. ER34. The AGs had 227 days between

receiving notice and entry of the first final order approving class action settlement to raise concerns they now contend are so urgent—far longer than the 90 days required by CAFA. 28 U.S.C. § 1715(d). Not a single Attorney General contacted class counsel, made any inquiry about the settlement or submitted anything to the district court. Only now, five years (1,781 days) after receiving notice, on appeal, and after the settlement has received final approval from two different district court judges, the AGs show up out of the blue seeking *reversal* of the district courts' final approval orders, cavalierly disregarding the trial court record and accusing counsel of unethical conduct and two esteemed district court judges of dereliction of duty.

The role CAFA envisions for state Attorneys General is to protect the interests of class members when the state Attorneys General receive "a notice of the *proposed* settlement", not to allow them to hold settlements that have been vetted and approved by district courts hostage to never-ending scrutiny. 28 U.S.C. § 1715(b) (emphasis added); *see California v. IntelliGender*, LLC, 771 F.3d 1169, 1182 (9th Cir. 2014) ("CAFA's notification requirement, § 1715, safeguards the State's ability to participate, comment, or object during the Rule 23 class action settlement *approval process*, fulfilling CAFA's purpose to provide a check against inequitable settlements.") (emphasis added); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22,

2010) ("CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have *during the normal course of the class action settlement procedures*.") (emphasis added). Obviously, the AGs did not take their responsibilities seriously at the appropriate time, but that should not be to the detriment of the parties or the settlement at this late date.

In addition to ignoring (and then attempting to rely on) CAFA, the AGs also claim a sudden "overarching responsibility to protect their States' consumers in their roles as chief law enforcement officers." Motion at 1. But where were these "chief law enforcement officers" when their citizens were being victimized for *years* by the defendants' data pass practices? The fact is that the only ones willing to stand up for the rights of the consumers in these or any other states were the Plaintiffs in this lawsuit and their counsel, who have now litigated this case for more than seven years and long put an end the EasySaver program by initiating this litigation.

The AGs have not, indeed, cannot, show that the proposed brief is desirable. On the contrary, to grant their Motion would set an undesirable precedent that CAFA procedures do not matter and invite endless challenges to settlements that have been fully vetted and approved by those best-suited to evaluate them: the district courts.

**B.    The Proposed Amicus Brief Is Irrelevant To The Disposition Of This Case.**

The proposed Amici Brief also has no bearing on the matters asserted and is not "relevant to the disposition of the case." FRAP 29(a)(3)(B). The proposed Amici Brief brings nothing to the table. The AGs had an opportunity to contribute to the record below, and they declined to do so. Instead, their brief merely parrots, almost verbatim, the Appellants' arguments. Consider the following:

First, the AGs argue that the district court erred (twice) in holding that the settlement is not a "coupon" settlement under CAFA. The AGs do not cite a single factual finding by the district court, or explain why the Court's analysis was wrong. Instead, the AGs' merely repeat Frank's CAFA arguments, all of which have been fully addressed above. *See* Section II.D, *supra.*[17]

---

[17] The two additional cases the AGs rely upon do not advance their arguments. First, the AGs rely on *Hofmann v. Dutch LLC*, 317 F.R.D. 566 (S.D. Cal. 2016), but this case merely provides another example of how the present matter is not a "coupon" settlement. There, the court rejected a $20 gift card settlement on the basis that the "least expensive item [available to purchase] costs $58.80," whereas class members here can acquire several products for less than the $20. And while the AGs cite *Tyler v. Michaels Stores, Inc.*, 150 F.Supp.3d 53 (D. Mass. 2015), for the premise that "awards where class members must 'transact additional business' with a defendant are, as a matter of law, coupons," Amici Brief at 10, the AGs fail to mention that the *Tyler* court crafted its own definition of "coupon", a definition the court acknowledged was "contrary to the Ninth Circuit's holding" in *DVD-Rental Antitrust*,150 F. Supp. 3d 53, 61, n.16 (D. Mass. 2015). Furthermore, the *Tyler* settlement provided class members with only 90 days to redeem their vouchers and prohibited redemption of the coupons from the defendant's online store. *Id.* at 56. Here, class members have a year to use the credits.

---

60

Next, the AGs argue that this settlement is inconsistent with *DVD-Rental Antitrust*. Again, the AGs merely regurgitate Frank's arguments and ignore the district court's careful consideration and reasoning in determining that CAFA does not apply here. These arguments are meritless and have been addressed fully above. *See* Section II.C *supra.*

The AGs then assert that counsel and the district court—despite being in a far superior position to assess the value of the settlement compared to the risks, rewards and potential downsides of continued litigation—are actually conspiring ***against*** consumers who now need to be rescued by the likes of Frank and his faceless benefactors, or that some other application of CAFA would more adequately protect consumers. Motion at 11-16. Again, in addition to being ironic coming from thirteen AG offices that for years did nothing to stop these data pass practices, these arguments are lifted directly from Frank's briefs and are soundly addressed above. *See* Section II.A, *supra.[18]*

---

[18] The AGs additional reliance on *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241(8th Cir. 1996), is also misplaced. In addition to being nonbinding, there, the circuit court held that the district court "abused its discretion in failing to allow counsel to submit time records" once it decided not to permit fees under the percentage of the benefit approach and instead to proceed with the lodestar approach. *Id.* at 246.

Because the AGs proposed Amici Brief has absolutely no bearing on the matters asserted and it not relevant to the disposition of the case, the Motion should be denied. *See* FRAP 29(a)(3)(B).

### C.   Even If This Court Allows The AGs To File Their Brief, It Must Affirm The District Courts' Orders.

Even if the Court is inclined to hear this eleventh-hour objection by the AGs, the Court should affirm the district court's approval for the reasons set forth above. Even if the AGs had complied with CAFA, an objection by a state Attorney General does not require a court to disapprove of a settlement. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *8 (N.D. Cal. Mar. 18, 2013) (rejecting concerns of Texas Attorney General at final approval of class settlement); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 468 (S.D.N.Y. 2013) (rejecting request to intervene by New York Attorney General in advance of final approval hearing and finding the Attorney General's request for the parties to enter into new negotiations "raises the concern of undue delay"). As demonstrated herein, these objections are as meritless as those of objector Perryman and were properly overruled. The district court's orders granting final approval are well supported, comply with all Ninth Circuit law and should be upheld.

## <u>CONCLUSION</u>

For all the reasons explained above, this Court should affirm the district court's Final Order and deny the AGs' Motion to submit their Amicus Brief.


Dated:  June 30, 2017

Respectfully submitted:

By:   */s/ Bruce Steckler*
Bruce Steckler
STECKLER LAW GROUP LLP
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Tel:  (972) 387-4040
Fax: (972) 387-4041
Bruce@Stecklerlaw.com

***On Behalf of Plaintiffs-Appellees***

Jennie Lee Anderson (SBN 203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com

James R. Patterson (SBN 211102)
THE PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  (619) 756-6990
Facsimile:  (619) 756-6991
jim@pattersonlawgroup.com

Michael Singer (SBN 58759)
COHELAN KHOURY & SINGER
605 C Street, Suite 200

San Diego, CA 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
ikhoury@ckslaw.com

*Co-Lead Counsel for Plaintiffs-Appellees*

## STATEMENT OF RELATED CASES PURSUANT TO
## NINTH CIRCUIT RULE 28-2.6

Plaintiffs-Appellees state that they do not know of any related cases pending in this court.


Dated: June 30, 2017                    STECKLER LAW GROUP, LLP


                                        By:  */s/ Bruce Steckler*
                                             Bruce Steckler

                                        *Attorneys for Plaintiffs-Appellees*

## PROOF OF SERVICE

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers. Additionally, I caused to be sent a copy of the foregoing via first class mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-registered attorneys:

Ethan Thomas Boyer
Post Kirby Noonan & Sweat
600 West Broadway, Suite 1100
San Diego, CA 92101-3355

Elliott Louis Pell
Jay J. Rice
Nagel Rice LLP
103 Eisenhower Parkway
Roseland, NJ 07068

Michael L. Kirby
Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101

Jacie C. Zolna
Myron M. Cherry & Associates
30 N. La Salle Street, Suite 2300
Chicago, IL 60602

*/s/ Bruce Steckler*