*Appeal* No. 16-56307

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

IN THE
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
_____

Bradley Berentson, et al.

*Plaintiffs-Appellees*

Brian Perryman,

*Objector-Appellant*

v.

Provide Commerce, Inc., et al.

*Defendant-Appellee*
_____

On Appeal from the United States District Court
for the Southern District of California, No. 3:09-cv-2094 BAS-WVG
_____

BRIEF OF *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY
ON BEHALF OF
NATIONAL LEGAL AID AND DEFENDER ASSOCIATION, ASSOCIATION
OF PRO BONO COUNSEL, LEGAL AID ASSOCIATION OF CALIFORNIA
AND TWENTY-FOUR OF ITS MEMBER ORGANIZATIONS, CALIFORNIA
BAR FOUNDATION, EQUAL RIGHTS ADVOCATES, FAMILY AND
CHILDREN'S LAW CENTER, COLUMBIA LEGAL SERVICES, HAWAII
JUSTICE FOUNDATION, LEGAL AID CENTER OF SOUTHERN NEVADA,
MONTANA JUSTICE FOUNDATION, NORTHWEST IMMIGRANT RIGHTS
PROJECT, WASHOE LEGAL SERVICES, AND WILLIAM E. MORRIS
INSTITUTE FOR JUSTICE
_____

Wilber H. Boies
Timothy M. Kennedy
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL  60606
(312) 372-2000
bboies@mwe.com

Robert M. Kline
McDermott Will & Emery LLP
333 SE 2nd Avenue
Miami, FL  33131
(305) 358-3500
Rkline@mwe.com

Jessica A. Mariani
McDermott Will & Emery LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
(310) 277-4110
jmariani@mwe.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(c)(1) of the Federal Rules of Appellate Procedure, the National Legal Aid and Defender Association (NLADA), the Association of Pro Bono Counsel (APBCo), the Legal Aid Association of California (LAAC) and twenty-four of its members: AIDS Legal Referral Panel, California Rural Legal Assistance Foundation, Center for Gender and Refugee Studies - California, Centro Legal de la Raza, Community Legal Services in East Palo Alto, Disability Rights California, Disability Rights Education and Defense Fund, Family Violence Appellate Project, Inner City Law Center, Justice & Diversity Center of The Bar Association of San Francisco, Justice in Aging, Legal Aid Foundation of Santa Barbara County, Legal Aid of Marin, Legal Aid of Sonoma County, National Center for Youth Law, National Health Law Program, National Housing Law Project, OneJustice, Pro Bono Project of Silicon Valley, Public Advocates, Public Interest Law Project, Public Law Center, San Diego Volunteer Lawyer Program, and Western Center on Law & Poverty; California Bar Foundation, Equal Rights Advocates, Family and Children's Law Center, Columbia Legal Services, Hawaii Justice Foundation, Legal Aid Center of Southern Nevada, Montana Justice Foundation, Northwest Immigrant Rights Project, Washoe Legal Services, and the William E. Morris Institute for Justice state as follows:

The NLADA is the largest national legal aid organization, with more than 700 program members dedicated to ensuring access to justice for the poor through the nation's civil legal aid and defender programs. NLADA has more than 700 program members; 103 of these members provide civil legal assistance on a local or statewide basis in the Ninth Circuit. NLADA's members include civil legal aid providers who are funded by a variety of sources, including *cy pres* awards, to address the overwhelming need for access to justice among the nation's poor. NLADA works with its member organizations, the American Bar Association and other access to justice organizations to encourage *cy pres* awards to organizations which address the huge justice gap for low-income persons in the civil justice system in the United States.

APBCo is a membership organization of over 211 partners, counsel, and practice group managers who run pro bono practices in more than 107 of the country's largest law firms. APBCo has some 40 members with law firm offices within the Ninth Circuit, and 17 members based there. APBCo is dedicated to improving access to justice by serving as a unified voice for the national law firm pro bono community. APBCo member firms provide millions of hours of pro bono assistance each year to low-income clients throughout the United States. The members of APBCo rely on the expertise of legal services organizations to help manage successful pro bono programs at the nation's largest law firms, to screen

and refer pro bono clients, and to provide training and on-going mentoring and to support and structure innovative programs that meet the needs in their communities - all in addition to the legal service organizations' provision of direct legal services.

LAAC is a statewide membership association of nearly 90 public interest law nonprofits that provide free civil legal services to low-income people and communities throughout California. LAAC member organizations, including the LAAC members who have joined as amici, provide legal assistance on a broad array of substantive issues, and serve a wide range of low-income and vulnerable populations. LAAC and its members receive *cy pres* awards in class action settlements. The LAAC members joining this amicus brief are: AIDS Legal Referral Panel, California Rural Legal Assistance Foundation, Center for Gender and Refugee Studies - California, Centro Legal de la Raza, Community Legal Services in East Palo Alto, Disability Rights California, Disability Rights Education and Defense Fund, Family Violence Appellate Project, Inner City Law Center, Justice & Diversity Center of The Bar Association of San Francisco, Justice in Aging, Legal Aid Foundation of Santa Barbara County, Legal Aid of Marin, Legal Aid of Sonoma County, National Center for Youth Law, National Health Law Program, National Housing Law Project, OneJustice, Pro Bono Project of Silicon Valley, Public Advocates, Public Interest Law Project, Public Law

Center, San Diego Volunteer Lawyer Program, and Western Center on Law & Poverty; California Bar Foundation, Equal Rights Advocates, Family and Children's Law Center all are organizations that directly provide legal services to low-income people in California and receive *cy pres* funds.

Columbia Legal Services, Hawaii Justice Foundation, Legal Aid Center of Southern Nevada, Montana Justice Foundation, Northwest Immigrant Rights Project, Washoe Legal Services, and the William E. Morris Institute for Justice fund or provide free civil legal services to low-income individuals and communities throughout Arizona, Hawaii, Montana, Nevada, and Washington and also receive *cy pres* funds.

Dated: June 30, 2017

By: _s/ Jessica Mariani
Jessica A. Mariani
McDermott Will & Emery LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
(310) 277-4110
jmariani@mwe.com

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ....................................................... v

TABLE OF AUTHORITIES ................................................... vi

INTEREST OF *AMICI CURIAE* ..............................................1

SUMMARY OF ARGUMENT .................................................3

ARGUMENT: ................................................................5

I. *CY PRES* AWARDS ARE AN ESTABLISHED AND APPROPRIATE DEVICE IN CLASS ACTION SETTLEMENT ADMINISTRATION .........5

II. BEST PRACTICES FOR THE USE OF *CY PRES* AWARDS .....................8

    A. Compensation of class members should come first. .............................8

    B. *Cy pres* awards are appropriate when cash distributions to class members are not feasible.........................................9

    C. *Cy pres* award recipients' interests should reasonably approximate class members' interests.................................11

    D. *Cy pres* distributions should consider the geographic make-up of the class. ...........................................12

    E. Courts should address conflicts of interest and the appearance of impropriety when they approve a *cy pres* award. ..............................................13

III. AWARDS TO LEGAL SERVICES ORGANIZATIONS SATISFY THE PURPOSE AND REQUIREMENTS OF THE *CY PRES* DOCTRINE .......15

CONCLUSION .............................................................22

CERTIFICATE OF COMPLIANCE...........................................24

CERTIFICATE OF SERVICE ...............................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ...................................................................*passim*

*Churchill Village, LLC v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) .............................................................................5

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ...........................................................................11

*In re Folding Carton Antitrust Litig.*,
    MDL No. 250, 1991 U.S. Dist. LEXIS 2553 (N.D. Ill. Mar. 5,
    1991) ................................................................................................................16

*United States ex rel. Houck v. Folding Carton Admin. Comm.*,
    881 F.2d 494 (7th Cir. 1989) .............................................................................7

*Hughes v. Kore of Ind. Enter., Inc.*,
    731 F.3d 672 (7th Cir. 2013) ...........................................................................10

*Ira Holtzman, C.P.A. & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ...........................................................................12

*Jones v. National Distillers*,
    56 F. Supp.2d 355 (S.D.N.Y. 1999) ...........................................................13, 20

*Klier v. Elf Autochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011) ....................................................................6, 7, 9

*Lane v. Facebook*, Inc.,
    696 F.3d 811 (9th Cir. 2012) ...................................................................*passim*

*Lane v. Facebook, Inc.*,
    709 F.3d 791 (9th Cir. 2013) ...........................................................................19

*Lessard v. City of Allen Park*,
    470 F. Supp. 2d 781 (E.D. Mich. 2007) ...........................................................15

*In re Lupron Marketing & Sales Practices Litig.*,
   677 F.3d 21 (1st Cir. 2012)..........................................................................7, 9, 12

*Marek v. Lane*,
   134 S. Ct. 8 (2013)............................................................................................4

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ............................................................................7

*Mirfasihi v. Fleet Mortgage Corp.*,
   356 F.3d 781 (7th Cir. 2004) ...........................................................................6

*Molski v. Gleich*,
   318 F.3d 937, 954-55 (9th Cir. 2003)..............................................................8

*In re Motorsports Merchandise Antitrust Litig.*,
   160 F. Supp. 2d 1392 (N.D. Ga. 2001)...........................................................13

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ................................................................*passim*

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009)..............................................................................5

*Pointer v. Bank of Am., N.A.*,
   No. 2:14-CV-00525-KJM-CKD, 2016 U.S. Dist. LEXIS 176930
   (E.D. Cal. Dec. 20, 2016) ...............................................................................20

*Rosser v. A & S Contr., Inc.*,
   No. 2:15-cv-00711, 2017 U.S. Dist. LEXIS 23377 (S.D. Ohio Feb.
   17, 2017) .........................................................................................................20

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .........................................................................5

*Superior Beverage Co. v. Owens-Illinois, Inc.*
   827 F. Supp. 477 (N.D. Ill. 1993)...................................................................13

## Statutes

28 U.S.C. § 455(a) ...............................................................................................14

735 Ill. Comp. Stat. Ann. 5/2-807.......................................................................17

California Civil Procedure Code § 384....................................................................16

Nebraska Revised Statutes § 25-319....................................................................17

North Carolina General Statutes § 1-267.10.........................................................17

South Dakota Codified Laws § 16-2-57 ................................................................17

Tennessee Annotated Code § 16-3-821 ................................................................18

Wisconsin Statutes § 803.08 ...............................................................................18

**Rules**

Colorado Rule of Civil Procedure 23(g)................................................................17

Connecticut Practice Book 9-9 .............................................................................17

Hawaii Civil Procedure Rule 23(f) ........................................................................16

Indiana Rules of Trial Procedure Rule 23(F)(2)....................................................17

Kentucky Rules of Civil Procedure Rule 23.06......................................................17

Louisiana Supreme Court Rule XLIII Part Q ..........................................................17

Maine Rule of Civil Procedure 23(f)(2) .................................................................17

Massachusetts Rule of Civil Procedure 23(e)........................................................17

Montana Rule of Civil Procedure 23(i) ..................................................................16

New Mexico District Court Rule of Civil Procedure 1-023(G)(2).........................17

Oregon Rule of Civil Procedure 32(O)...................................................................16

Pennsylvania Rule of Civil Procedure Chapter 1700 .............................................17

South Carolina Rule of Civil Procedure 23(e)........................................................17

Washington Supreme Court Civil Rule 23(f) .........................................................17

## Other Authorities

3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 12:32 (5th ed. 2017) ....................................................................5

ALI Principles § 3.07(b) ..........................................................................8

ALI Principles § 3.07(c) .................................................................11, 12

ALI Principles § 3.07 cmt. a ...............................................................8, 10

ALI Principles, § 3.07 cmt. b ............................................................14, 21

Bob Glaves & Meredith McBurney, Cy Pres *Awards, Legal Aid and Access to Justice: Key Issues In 2013 and Beyond*, 27 Mgmt. Info. Exch. J. 24, 25 (2013) ..........................................................................21

Calvin C. Fayard, Jr. & Charles S. McCowan, Jr., *The Cy Pres Doctrine: "A Settling Concept,"* 58 La. B.J. 248, 251 (2011) ..........................22

Daniel Blynn, *Cy Pres Distributions: Ethics & Reform*, 25 Geo. J. Legal Ethics 435, 438 (2012) ...............................................................22

Danny Van Horn & Daniel Clayton, *It Adds Up: Class Action Residual Funds Support Pro Bono Efforts*, 45 Tenn. B.J. 12, 13-14 (2009) ....................................................................................................22

Robert E. Draba, *Motorsports Merchandise: A Cy Pres Distribution Not Quite "As Near As Possible,"* 16 Loy. Consumer L. Rev. 121, 122 (2004) ..............................................................................................21

Thomas A. Doyle, *Residual Funds in Class Action Settlements: Using* "Cy Pres" *Awards to Promote Access to Justice*, The Federal Lawyer, July 2010, at 26 ..............................................................18, 22

Wilber H. Boies and Latonia Haney Keith, *Class Action Settlement Residue and Cy Pres Awards: Emerging Problems and Practical Solutions*, 21 VA. J. SOC. POL'Y & L. 269 (2014) .................................8

## INTEREST OF *AMICI CURIAE*

The National Legal Aid and Defender Association (NLADA), and the Legal Aid Association of California (LAAC), its member organizations, and other amici parties are public interest legal services organizations and have a substantial interest in ensuring that legal services organizations are recognized as appropriate recipients of *cy pres* awards in class action settlements. The Association of Pro Bono Counsel (APBCo) is a mission-driven membership organization that works with, and relies upon, public interest legal service organizations to carry out its mission.

This brief was authored entirely by counsel for the amici. This brief is submitted *pro bono,* by counsel of record. No party, or any counsel for a party, authored this brief, in whole or in part, nor did any party, party's counsel or any other person or entity contribute money to fund the preparation or submission of this brief.

*Cy pres* awards in class action settlements provide a critical funding source for legal services organizations. Funding through *cy pres* awards is especially important for legal services organizations because of dramatic declines in federal and state funding for legal aid and IOLTA (Interest on Lawyer Trust Accounts) funding. Without sufficient substitute funding from sources such as *cy pres* awards in class actions, legal services organizations will not have the resources to meet the

need for access to justice of the underprivileged and disadvantaged in our country. It is therefore critical that this Court acknowledge that legal services organizations are appropriate recipients of *cy pres* awards as part of providing further guidance to district courts through the opinion in this appeal.

All amici parties have a substantial interest in ensuring that legal service organizations are recognized as appropriate recipients of *cy pres* awards. Several amici parties directly provide free legal services to low-income people and underserved communities, and have received *cy pres* distributions of residual funds from class action settlements. Other amici parties are membership organizations which work with, and rely upon, public interest legal service organizations to carry out their mission.

## SUMMARY OF ARGUMENT

The role of an amicus is to assist this Court in making a thorough and even-handed analysis of the legal issues before it. To that end, amici submit this brief in support of neither party to present a broader perspective on *cy pres* awards in class actions than is found in the briefs of the parties. This amicus submission will not argue the specifics of whether the district court's decision should be affirmed or reversed and remanded. This brief will instead (a) present an analysis of the factors that courts should examine in reviewing proposed *cy pres* awards in class action settlements and (b) discuss reasons why this Court should explicitly recognize that legal services organizations are appropriate recipients of *cy pres* awards.

*Cy pres* awards that adhere to clearly identified best practices facilitate the resolution of complex class litigation and serve legitimate public purposes. Trial courts throughout the country need guidance to ensure that they employ a principled, systematic approach when they address the issues, yet still have the flexibility they require to assess individual *cy pres* awards in the context of proposed settlements.

In a Statement which accompanied the Supreme Court order denying the certiorari petition for review of this Court's 2012 *Lane v. Facebook* decision, Chief Justice Roberts observed that the Supreme Court has never addressed:

> … fundamental concerns surrounding the use of [*cy pres*] remedies in class action litigation, including when, if ever, such relief should be considered; how to assess its fairness as a general matter; whether new entities may be established as part of such relief; if not, how existing entities should be selected; what the respective roles of the judge and parties are in shaping a *cy pres* remedy; how closely the goals of any enlisted organization must correspond to the interests of the class; and so on.

*Marek v. Lane*, 134 S. Ct. 8, 9 (2013).  Those issues merit consideration in every court decision to approve, affirm, or reverse a class action settlement that involves a *cy pres* award.  This amicus submission therefore respectfully presents a principled and systematic approach which the courts and litigants should use in cases that involve *cy pres* awards.

Specifically, courts should consider each of the following issues before approving *cy pres* awards: (1) the objective to compensate class members first, (2) the feasibility of distributing settlement proceeds to class members, (3) whether *cy pres* recipients reasonably approximate the interests of the class, (4) the location of the litigation and geographic make-up of the class, and (5) avoiding conflicts of interest.  In giving careful consideration to those issues, the availability and effectiveness of *cy pres* awards should not be eroded by unreasonably narrow and mechanical constraints or tests.

Finally, the courts should recognize the important role of legal services organizations, which provide representation to countless individuals who seek access to justice.  Legal services organizations serve the same purpose as class

actions in our legal system: to protect the legal rights of the otherwise

unrepresented.  Stated simply, legal services organizations are appropriate

recipients of *cy pres* awards.

## ARGUMENT:

## I. *CY PRES* AWARDS ARE AN ESTABLISHED AND APPROPRIATE DEVICE IN CLASS ACTION SETTLEMENT ADMINISTRATION

Approving a proposed class action settlement is a considerable responsibility

for a district judge, involving detailed notices to class members and Rule 23

fairness hearings to determine if the proposed settlement is "fair, reasonable and

adequate" for class members.  In this circuit, district courts are required to consider

an eight-factor test to evaluate the fairness of a proposed class action settlement.

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

One among many issues for the district judge is what to do about residual

settlement funds that cannot feasibly be distributed to class members for one

reason or another.

Courts can approve the disposition of residual class settlement funds in one

of three ways: (1) a *cy pres* award, (2) escheat to the state, or (3) reversion to the

defendant.  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307

(9th Cir. 1990).[1]  Notwithstanding the availability of other options, courts

---

[1] Courts routinely reject a fourth option: awarding unclaimed residual funds to
already fully compensated class members.   *See, e.g.*, 3 Alba Conte & Herbert B.

consistently prefer the distribution of residual funds through *cy pres* awards. *See, e.g.*, *Six Mexican Workers*, 904 F.2d at 1307-09; *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) (affirming approval of a class action settlement agreement that includes a *cy pres* component).

The term *cy pres* derives from the Norman French phrase, *cy pres comme possible*, meaning "as near as possible," and the *cy pres* doctrine originally was a rule of construction used to save a testamentary gift that would otherwise fail. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). In the trust law context, it is important to honor the intent of the deceased testator by finding a new beneficiary as close as possible to the beneficiary chosen by the testator. But class actions do not involve a trust created by a deceased settlor for a specific purpose; instead, courts borrow the device to help resolve class actions. *See, e.g.*, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) (using the *cy pres* doctrine in a class action "for a reason unrelated to the trust doctrine"; namely, to prevent the defendant from "walking away from the litigation scot-free because of the infeasibility of distributing the proceeds of the settlement").

---

Newberg, *Newberg on Class Actions* § 12:32 (5th ed. 2017) (Recognizing *cy pres* distribution to a charitable organization as one of "four common ways of distributing unclaimed funds..."); *Klier v. Elf Autochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34-36 (1st Cir. 2009).

Federal and state courts throughout the country use the *cy pres* doctrine in class actions when it is "economically or administratively infeasible to distribute funds to class members." *See, e.g.*, *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 169.[2] For example, sometimes it is not economically feasible to distribute funds to class members because "the cost of distributing individually to all class members exceeds the amount to be distributed." *See id.* Or it may not be administratively feasible to distribute settlement funds because settlement administrators cannot locate certain class members or class members fail to file claims or cash settlement checks. *See id.* Courts then approve *cy pres* awards to ensure that class action settlement funds are used for "the aggregate, indirect, prospective benefit of the class." *See Masters,* 473 F.3d at 436.

Because *cy pres* awards afford courts and class action litigants an effective tool for the administration and resolution of class actions, the Court should reject sweeping arguments that misconstrue this Court's *cy pres* opinions and paint all *cy pres* awards as inherently suspect.[3] Indeed, in this appeal, the Court has an opportunity to provide district courts with clear guidance concerning the scope of

---

[2] *See also In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 38-39 (1st Cir. 2012); *Klier*, 658 F.3d at 475; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *United States ex rel. Houck v. Folding Carton Admin. Comm.*, 881 F.2d 494, 502 (7th Cir. 1989).

[3] Amici take no position concerning the structure or total amount of the settlement in this case.

review of proposed *cy pres* awards and, more specifically, to address the practical and policy reasons for approving *cy pres* awards to legal services organizations.

## II.   BEST PRACTICES FOR THE USE OF *CY PRES* AWARDS

The American Law Institute's Principles of Law of Aggregate Litigation ("ALI Principles") provide guidance on the use of *cy pres* awards in class actions. *See* ALI Principles § 3.07 cmt. a (2010).[4]  In addition, many district court orders and circuit court opinions reviewing class action settlements identify a set of best practices for *cy pres* awards in the class action context. Amici summarize those best practices below.[5]

### A.   Compensation of class members should come first.

Where funds remain after a first round distribution to class members (as commonly happens in securities class actions, for example), residual funds should be distributed to class members until the class members who make claims recover their full losses, so long as such distributions are economically feasible.  *See* ALI Principles § 3.07(b).  Appellate courts therefore have reversed *cy pres* awards made when payments to class members were feasible.  *See, e.g.*, *Molski v. Gleich*,

---

[4] In *Nachshin* and other appeals, this Court has acknowledged the ALI Principles. *See* 663 F.3d at 1039 n.2.

[5] For additional discussion of these best practices, *see* Wilber H. Boies and Latonia Haney Keith, *Class Action Settlement Residue and Cy Pres Awards: Emerging Problems and Practical Solutions*, 21 VA. J. SOC. POL'Y & L. 269 (2014), http://www.vjspl.org/wp-content/uploads/2014/03/3.25.14-Cy-Pres-Awards_STE_PP.pdf (last visited June 26, 2017).

318 F.3d 937, 954-55 (9th Cir. 2003) (rejecting a settlement which made no provision for payments to class members who had significant disability accommodations claims); *see also Klier*, 658 F.3d at 479 (holding that the district court abused its discretion by approving a *cy pres* distribution to charities of unused funds from one subclass instead of distributing such funds to the members of a different subclass).[6] Class members come before *cy pres* awards only until the point that the class members are made whole. When class members already have been made whole, courts prefer *cy pres* awards to additional distributions that would provide windfalls to fully indemnified class members. *See, e.g.*, *In re Lupron*, 677 F.3d at 34-35 (approving *cy pres* award over class members' request for treble damages).

### B. *Cy pres* awards are appropriate when cash distributions to class members are not feasible.

Cash distributions may be feasible for one or more rounds of payments to class members, but after a certain point additional distributions would become either (1) a windfall for class members or (2) economically inefficient. *See, e.g.*, *In*

---

[6] Critics of *cy pres* distributions often misplace reliance on *Klier*, failing to recognize that the court did *not* reject *cy pres* awards in class actions; to the contrary, the court expressly recognized the proper use of *cy pres* awards. *See Klier*, 658 F.3d at 474 ("In the class-action context, a *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." (internal quotation omitted)).

*re Lupron*, 677 F.3d at 34-35; *Lane v. Facebook*, 696 F.3d 811, 821 (9th Cir. 2012). But cash distributions to class members are not always feasible.

In many class actions (and commonly in consumer class actions), plaintiffs allege that defendants engaged in wide-scale misconduct that caused only *de minimis* damages to individual class members. *See, e.g.*, *Nachshin*, 663 F.3d at 1037. In those cases, class action settlements cannot realistically produce material monetary benefits for individual class members, and the *cy pres* doctrine can provide the most appropriate solution to conclude the case. *See* ALI Principles § 3.07 cmt. a. (citing cases and recognizing courts' ability to approve class action settlements that provide for cash payments to third parties with no direct cash recovery to class members).

In *Lane*, for example, even though the class members did not receive a direct monetary distribution, the proposed settlement still provided meaningful relief because it required Facebook to change its business practice and pay monetary payments through its funding of a *cy pres* award. *See Lane*, 696 F.3d at 821 (noting objectors' concession that direct monetary payments to the class would be *de minimis* and therefore were infeasible); *see also Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013) (endorsing a *cy pres* award with no payments to class members, stating "class action [litigation], like litigation in general, has a deterrent as well as a compensatory objective").

## C.    *Cy pres* award recipients' interests should reasonably approximate class members' interests.

*Cy pres* awards should go to entities "whose interests reasonably approximate those being pursued by the class." ALI Principles § 3.07(c). As this Court has stated, there should be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (reversing and remanding *cy pres* award because "[n]ot just any worthy recipient can qualify as an appropriate *cy pres* beneficiary").

This Court's *cy pres* opinions echo the ALI's "reasonably approximate interests" requirement, which ensures that *cy pres* awards do not put the charitable interests of class counsel and named parties ahead of the interests of class members. At the same time, the plain language of the ALI's "reasonably approximate interests" requirement is deliberately broad, and it gives litigants significant discretion to negotiate the specific terms of settlement agreements to resolve class actions. "Reasonably approximate interests" should not be conflated with "perfectly coextensive" interests, "the same" interests, or "substantially the same" interests. Overly narrow tests could confuse the functional language of the ALI Principles, create uncertainty in the law for settling parties and require district judges to decide on an *ad hoc* basis what it means to have interests that are the "same."

When deciding whose interests reasonably approximate class members' interests, courts should generally not substitute their judgment for the parties' freedom of contract in an arms-length settlement agreement. *See Lane*, 696 F.3d at 820-21 ("We do not require as part of [the *cy pres*] doctrine that settling parties select a *cy pres* recipient that the court or class members would find ideal.").[7]

### D. *Cy pres* distributions should consider the geographic make-up of the class.

When reviewing *cy pres* awards in class actions, in addition to considering the interests of silent class members, courts should consider the geographic composition of the class. *See, e.g.*, *Nachshin*, 663 F.3d at 1036, 1040 (approving class action settlement with no cash component for class members, but concluding that *cy pres* awards in that national class action should not go only to local organizations); *see also, e.g.*, *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180 (citing *Nachshin*); *Ira Holtzman, C.P.A.& Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (same).

Of course, cases are heard in particular courthouses for particular reasons – including forum selection by the parties or by the Judicial Panel on Multidistrict Litigation in many large class actions. Courts may find the right balance between

---

[7] Indeed, as part of a practical approach to class action settlements, leading cases and the ALI Principles approve of *cy pres* awards to third parties whose interests do not reasonably approximate those being pursued by the class when no recipient has interests that reasonably approximate those of the class. *See, e.g.*, *Lupron*, 677 F.3d at 33 (citing ALI Principles § 3.07(c)).

local and national interests for *cy pres* awards by requiring that some amount of *cy pres* distributions in a multi-state or national class action be awarded to organizations outside the local jurisdiction of the relevant tribunal. The allocation, however, might vary depending on the specific facts of a particular dispute. This is a subject best left to the discretion of district courts, with appropriate deference to the parties' reasonable proposals. Many counsel and courts have followed this approach. *See, e.g.*, *Jones v. Nat'l Distillers*, 56 F. Supp.2d 355, 359 (S.D.N.Y. 1999) (citing *Superior Bev. Co. v. Owens-Illinois, Inc.* 827 F. Supp. 477, 478-479 (N.D. Ill. 1993)); *In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1394 (N.D. Ga. 2001).

### E. Courts should address conflicts of interest and the appearance of impropriety when they approve a *cy pres* award.

The prospect of *cy pres* distributions can improperly motivate parties and their counsel to steer unclaimed awards to recipients that advance their own agendas. *See, e.g.*, *Lane*, 696 F.3d at 829 (Kleinfeld, J., dissenting). Courts reviewing *cy pres* awards should look carefully at potential conflicts of interest between class counsel and their clients. Apart from obvious and legitimate questions when counsel have an affiliation with a proposed *cy pres* recipient, *cy pres* distributions may increase a settlement that is the basis for plaintiffs' attorneys' fees without increasing the direct benefit to the class. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d at 173.

To deal with these concerns, courts should evaluate whether any of the parties or counsel involved in the litigation has any significant affiliation with or would personally benefit from the distribution to the proposed *cy pres* recipients. Courts may (and probably should) require that motions to approve class settlements disclose the named parties' and their counsels' relationships, if any, to the proposed *cy pres* recipient. Courts also may inquire into the relationships and selection process at hearings on motions to approve class settlements.

Finally, critics of *cy pres* awards also express concerns about judicial involvement in making *cy pres* awards. In legal ethics terms, "the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety." *Nachshin*, 663 F.3d at 1039. This concern is easily addressed: parties, not courts, should propose *cy pres* award recipients, and courts should give effect to the parties' choices, subject to the basic guidelines discussed herein.

As to judicial conflicts and the appearance of impropriety, "[a] *cy pres* remedy should not be ordered if the court . . . has *significant* prior affiliation with the intended recipients that would raise substantial questions about whether the selection of the recipient was made on the merits." ALI Principles, § 3.07 cmt. b (emphasis added). But this rule should not be used as a weapon by objectors. For example, in *Nachshin,* one objector attacked the district judge, who approved the

parties' settlement agreement because her husband was a board member of one of the proposed *cy pres* recipients. This Court firmly rejected the attack, applying the test for recusal under 28 U.S.C. § 455(a) and finding that "there is no reason to believe [the judge's husband] (as one of 50 volunteer board members) would himself realize a significant benefit" from the proposed award." *See Nachshin*, 663 F.3d at 1041-42.

In short, *cy pres* awards warrant careful judicial review, and district judges have reliable procedures at their disposal to conduct such a review without substituting their judgment for the parties' agreement and without overly restricting the organizations that can receive *cy pres* awards.

## III. AWARDS TO LEGAL SERVICES ORGANIZATIONS SATISFY THE PURPOSE AND REQUIREMENTS OF THE *CY PRES* DOCTRINE

At least one category of *cy pres* recipients always has (1) interests that reasonably approximate the interests of a class and (2) a "driving nexus" with class members: legal services organizations. These organizations – like the class action device itself – exist to provide broad access to justice.

Rule 23 class actions exist to provide access to the courts for those who could not otherwise afford to litigate a legitimate claim. Likewise, *cy pres* awards to legal services organizations make access to justice a reality for people who otherwise would not be able to obtain the protections of the justice system. Courts have repeatedly recognized this connection. *See, e.g.*, *Lessard v. City of Allen*

- 15 -

*Park*, 470 F. Supp. 2d 781, 783-84 (E.D. Mich. 2007) ("The Access to Justice fund is the 'next best' use of the remaining settlement monies in this case, because both class actions and Access to Justice programs facilitate the supply of legal services to those who cannot otherwise obtain or afford representation in legal matters.") (internal citation omitted); *In re Folding Carton Antitrust Litig.*, MDL No. 250, 1991 U.S. Dist. LEXIS 2553, at *7-8 (N.D. Ill. Mar. 5, 1991) (approving a *cy pres* distribution to establish a program to increase access to justice "for those who might not otherwise have access to the legal system").

For this very reason, a growing number of states have approved and even mandated *cy pres* awards to legal services organizations through legislation and adoption of court rules.  In this circuit, for example, California Code of Civil Procedure § 384 specifically authorizes payment of residual class action funds to California nonprofits that provide civil legal services to low-income individuals[8]; Hawaii Civil Procedure Rule 23(f) gives the courts discretion to approve distribution of residual funds to Hawaii nonprofits that provide legal assistance to indigent individuals; Montana Rule of Civil Procedure 23(i) *requires* the distribution of 50% of residual funds to an Access to Justice organization; Oregon Rule of Civil Procedure 32(O) *requires* the disbursement of at least 50% of

---

[8] On June 27, 2017, California Governor Jerry Brown signed budget trailer bill AB 103, which creates an automatic set-aside of 25% of state *cy pres* awards, to be distributed to legal aid organizations through the Equal Access Fund.  Cal. Civ. Proc. Code § 384 (b)(1)(B). [link]

residual funds to organization funding no-cost legal services for poor; and

Washington Supreme Court Civil Rule 23(f) *requires* the distribution of at least

25% of residual funds to the Legal Foundation of Washington to promote access to

the civil justice system for low-income residents.

Sixteen other states have similar rules and statutes.[9]  These state statutes and

court rules (a) recognize the connection between access to justice through legal aid

---

[9] *See* Colo. R. Civ. Proc. 23(g)(requiring disbursement of at least 50% of residual funds to Colorado Lawyer Trust Account Fund (COLTAF) to support access to the civil justice system); Conn. Practice Book 9-9 (requiring that in absence of order designating beneficiary, disbursement of residual funds to organization administering Connecticut IOTLA for purpose of funding organizations that provide legal services for the poor in Connecticut); 735 Ill. Comp. Stat. Ann. 5/2-807 (requiring disbursement of at least 50% of residual funds to organizations that improve access to justice for low-income Illinois residents); Ind. R. Trial P. 23(F)(2) (requiring disbursement of at least 25% of residual funds to the Indiana Bar Foundation); Ky. R. Civ. P. 23.06 (requiring disbursement of at least 25% of residual funds to Kentucky legal aid organizations based on LSC poverty population formula); La S. C. Rule XLIII Part Q. (promoting distribution of residual funds to the Louisiana Bar Foundation); Me. R. Civ. P. 23(f)(2) (requiring distribution of residual funds to the Maine Bar Foundation); Mass. R. Civ. P. 23(e) (permitting distribution of residual funds to Massachusetts nonprofits that provide legal services to low-income individuals); Neb. Rev. Stat. 25-319 (requiring distribution of residual funds to the Nebraska Legal Aid and Services Fund); N.M. Dist. Ct. R. C.P. 1-023(G)(2) (permitting distribution of residual funds to New Mexico nonprofits that provide civil legal services to low-income individuals); N.C. Gen. Stat. § 1-267.10 (requiring equal distribution of residual funds between the Indigent Person's Attorney Fund and the North Carolina State Bar for the provision of civil services for indigents); Pa. R. Civ. P. Ch. 1700 (requiring distribution of at least 50% of residual funds to the Pennsylvania IOLTA Board to promote the delivery of civil legal assistance); S.C.R.C.P. 23(e) (requiring distribution of at least 50% of residual funds to South Carolina Bar Foundation to support programs that promote access to justice); S.D. Codified Laws § 16-2-57; (requiring disbursement of at least 50% of residual funds to the South Dakota

and through class actions and (b) demonstrate a clear public policy favoring *cy pres* awards to legal services organizations.[10]

District courts should require parties to explain in their motions for settlement approval how the proposed *cy pres* recipient advances the interests of absent class members. This has been a contested issue in a number of class action settlements resulting in appeals by objectors. *See, e.g.*, *Lane,* 696 F.3d at 817. In *Lane*, the plaintiffs' claims concerned allegedly illegal collection and use of information about on-line activities of Facebook participants without their permission. Facebook agreed to permanently terminate the particular program (but not the practice of collecting such information) and donate $6.5 million to establish a new foundation which would give grants to organizations involved in educating consumers about on-line information protection. *See id.* The settlement agreement provided for a Facebook officer to serve as one of three directors of the new

---

Commission on Equal Access to Our Courts); Tenn. Code Ann. § 16-3-821 (authorizing the distribution of residual funds to the Tennessee Voluntary Fund for Indigent Civil Representation); Wisc. Stat. § 803.08 (requiring disbursement of at least 50% of residual funds to Wisconsin Trust Account Foundation to support direct delivery of legal services to persons of limited means in non-criminal matters).

[10] State statutes and rules enacted to "require residual funds to be distributed, at least in part, to legal aid projects" provide "evidence of a public policy favoring *cy pres* awards that service the justice system." Thomas A. Doyle, *Residual Funds in Class Action Settlements: Using* "Cy Pres" *Awards to Promote Access to Justice*, The Federal Lawyer, July 2010, at 26, 26-27.

foundation – and for the plaintiffs' class counsel and defense counsel to serve on its "board of legal advisors."  *See id.*

This Court found that the proposed *cy pres* award in *Lane* properly accounted for the factors outlined in *Nachshin,* because the remedy "bears a direct and substantial nexus to the interests of absent class members" and rejected the objections, finding that the board of directors appointments and legal counsel arrangements were the "offspring of compromise," and that the new foundation would use funds to benefit class members.  *Id.* at 820-22.

Judge Kleinfeld's dissent argued that "[t]his settlement perverts the class action into a device for depriving victims of remedies for wrongs, while enriching both the wrongdoers and the lawyers purporting to represent the class."  *Id.* at 826. A rehearing *en banc* was denied, but with a dissenting opinion by six other judges of this Court that was critical of the *cy pres* award.  *See Lane v. Facebook, Inc.*, 709 F.3d 791 (9th Cir. 2013).

As discussed above, the *cy pres* award that was so hotly contested in *Lane* became the basis for Justice Roberts' "statement" raising questions about *cy pres* awards.  One good answer to many of those questions is settlements that provide for *cy pres* distributions to legal services organizatons.  Federal and state courts throughout the country have long recognized that organizations providing access to justice for underserved and disadvantaged people are appropriate beneficiaries of

*cy pres* distributions from class action settlements or judgments. *See, e.g.*, *Rosser v. A & S Contr., Inc.*, No. 2:15-cv-00711, 2017 U.S. Dist. LEXIS 23377, at *6 (S.D. Ohio Feb. 17, 2017) (approving *cy pres* award to legal services organization because "the interests of [the organization] reasonably approximate those being pursued by the class"); *Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 U.S. Dist. LEXIS 176930, at *61-62 (E.D. Cal. Dec. 20, 2016) (approving *cy pres* award to legal aid society because it was "the next best distribution" after distributions directly to class members); *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 359 (S.D.N.Y. 1999) (citing with approval cases that involved *cy pres* awards designed to improve access to legal aid). These decisions recognize that legal services organizations in this Circuit and across the country protect and preserve the basic necessities of life – food, shelter, health care, safety and education – for millions of Americans for whom legal services organizations are not just one means of access to justice; they are the *only* means.[11]

---

[11] In *Nachshin*, this Court suggested in dicta that the Legal Aid Foundation of Los Angeles and the Federal Judicial Foundation (together with the Boys and Girls Club of Santa Monica and Los Angeles) were not appropriate *cy pres* recipients because they did not "have anything to do with the objectives of the underlying statutes on which Plaintiffs base their claims." 663 F.3d at 1040. As this Court explained, the proposed awards did not "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Id.* In *Nachshin*, however, the parties apparently failed to explain any relationship between the legal services organizations they proposed and the class action. *See id.* One purpose of this amicus brief is to explain that relationship and to suggest that this Court should

This "access to justice" nexus falls squarely within the ALI Principles: "there should be a presumed obligation to award any remaining funds to an entity that resembles, in either composition or purpose, the class members or their interests." ALI Principles § 3.07 cmt. b. This is because one general interest of every class member is access to justice for persons who would not realistically be able to seek court relief on their own. Either because it would be too inefficient for the court to adjudicate each injured party's claim separately or because it would be cost prohibitive for each injured party to pursue an individual claim:

> [L]egal aid or [access to justice] organizations are always appropriate recipients of *cy pres* or residual fund awards in class actions because no matter what the underlying issue is in the case, every class action is always about access to justice for a group of litigants who on their own would not realistically be able to obtain the protections of the justice system.

Bob Glaves & Meredith McBurney, Cy Pres *Awards, Legal Aid and Access to Justice: Key Issues In 2013 and Beyond*, 27 Mgmt. Info. Exch. J. 24, 25 (2013); *see also* Robert E. Draba, *Motorsports Merchandise: A Cy Pres Distribution Not Quite "As Near As Possible,"* 16 Loy. Consumer L. Rev. 121, 122 (2004) (the rationale for approving *cy pres* distributions to legal services organizations, like the purpose of the class action device, is "to protect the legal rights of those who would otherwise be unrepresented").

---

provide a precedent that establishes legal aid organizations are acceptable *cy pres* recipients.

For other discussions of the important link between *cy* pres awards and legal services, see Thomas A. Doyle, *Residual Funds in Class Action Settlements: Using "Cy* Pres*" Awards to Promote Access to Justice*, The Federal Lawyer, July 2010, at 26, 26-27 (providing examples of class action *cy pres* awards that improved access to justice for indigent litigants); Daniel Blynn, *Cy Pres Distributions: Ethics & Reform*, 25 Geo. J. Legal Ethics 435, 438 (2012) (*cy pres* distributions to specific organizations have advanced legal services); Calvin C. Fayard, Jr. & Charles S. McCowan, Jr., *The Cy Pres Doctrine: "A Settling Concept,"* 58 La. B.J. 248, 251 (2011) (*cy pres* awards to Louisiana legal services organizations promote access to the courts); Danny Van Horn & Daniel Clayton, *It Adds Up: Class Action Residual Funds Support Pro Bono Efforts*, 45 Tenn. B.J. 12, 13-14 (2009) (*cy pres* awards to legal services are similar to class actions in providing access to justice).

## CONCLUSION

While appellate courts should carefully scrutinize specific *cy pres* awards and objections on appeal, it is equally important for this Court to give the district courts sound general guidance for considering *cy pres* awards as part of the fairness hearing in a Rule 23 class action settlement.  That guidance should include the widely recognized criteria discussed in this amicus brief:  (1) compensation of class members should come first; (2) *cy pres* awards are appropriate where cash distributions to class members are not feasible; (3) *cy pres* awards should reasonably reflect the interests of the class; (4) *cy pres* distributions should

recognize both the geographic scope of the class and connections of the case to the forum; (5) conflicts of interest and the appearance of impropriety can be avoided by applying recognized rules, and (6) legal services organizations should always be considered as appropriate *cy pres* recipients.

Amici urge this Court to endorse these simple rules to minimize controversies about an effective and important mechanism for class action administration. We particularly urge this Court to expressly recognize that legal services organizations are appropriate recipients of *cy pres* awards in class actions.

Dated: June 30, 2017

Respectfully submitted,

By: s/ Jessica Mariani

Wilber H. Boies
Timothy M. Kennedy
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606
(312) 372-2000
bboies@mwe.com

Robert Kline
McDermott Will & Emery LLP
333 SE 2nd Avenue
Miami, FL 33131
(305) 358-3500
Rkline@mwe.com

Jessica Mariani
McDermott Will & Emery LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
(310) 277-4110
jmariani@mwe.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 29(a)(4)(G) and Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because the petition contains 5,450 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

Dated: June 30, 2017

By: s/ Jessica Mariani
Jessica Mariani
McDermott Will & Emery LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
(310) 277-4110
jmariani@mwe.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 30, 2017.

Participants in the appeal are registered CM/ECF users and will be served by the appellate CM/ECF system.

By: s/ Jessica Mariani
Jessica Mariani
McDermott Will & Emery LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
(310) 277-4110
jmariani@mwe.com